## J. F. O'CONNOR & CO. V. SMITH & GETHING ET AL.

### No. 3149.

1. **Damages from Breach of Labor Contract.** — The profits that may be considered in giving damages for a breach of contract are such as are the direct and immediate fruits of the contract entered into between the parties to it—e. g., subcontractors in railway excavation were delayed in thr work contracted for; the damages for such delay would not include loss of profits that might have resulted from collateral enterprises; it would include loss of profits from being deprived of a part of the work contracted for; and if men and teams hired were not employed by reason of the delay, the time alone can be estimated; or if owned by the subcontractor, the value of the hire for the unlawful delay may be allowed.

2. **Construction of Contract.** — In a contract by a railway company with contractors was the clause: "Upon the completion of all the work herein contracted for in the time and manner agreed upon, the engineer shall make a final statement of all the work done, from which shall be deducted the sum of the payments theretofore made on the monthly estimates, and the residue shall be paid by said company to said contractors upon their receipting for the same in full upon said final estimate and rendering clear receipts to the party of the first part from all subcontractors and employes on said work and owners of material used, releasing the party of the first part (the railway company) from all liabilities to said subcontractors, laborers, or owners of material used." It was further stipulated, that "in case the company shall·be delayed in acquiring the title to the lands required by the road, or from any other reason, the contractors shall not be entitled to any damages by reason thereof, but shall have such extension of time for the completion of the work as the engineer may deem proper, not to be less, however, than the time lost by the delay." After the completion of the work a settlement was made by the road with the contractors, and the subcontractors sued the contractors for damages caused by their being delayed in entering upon their work. The defendants made the railway company a party defendant and asked judgment· over against it, alleging that whatever delay existed was caused by the engineer of the railway company. *Held:*

1. The clause in the contract in regard to delay can not be held to apply to the matter in suit. The delay contemplated in the contract was for one the company might suffer, and not one that it should cause.

2. The clause does not admit of parol evidence to explain it.

3. The engineer represented the railway company, and delay caused by him is chargeable to the company.

4. The first clause cited from the contract does apply to the matter in controversy, and is a complete defense by the railway company against the action by the contractors for recovery over, etc.

3. **Indemnity Bond—Release.**—Before the final settlement between the contractors and the railway company, and in consideration therefor, the contractors executed a bond to the railway company, conditioned that they should "hold harmless the said railway company from all claims or suits for work or labor done and materials provided on said work, or for damage done in the construction thereof." Before this bond was made the company had withheld a balance to secure it. This balance was paid upon the execution of the bond. *Held,* this bond did not cancel any portion of the original contract not embraced in the bond, and did not absolve the contractors from the obligation to protect the company against claims of subcontractors.

APPEAL from Dallas.   Tried below before Hon. ANSON RAINEY, Judge of the Fortieth Judicial District.

No statement is necessary.

*Robertson & Coke,* for appellants.—1.   Where a contractor has been allowed to perform under his contract the work agreed to be done by him and has received the contract price therefor, but has been unreasonably hindered and delayed in its performance by the fault of the other party, he can not recover as damages for said hindrance and delay the profits that he might have made by his business or calling on other work if he had not been so delayed.   Railway v. Shirley, 45 Texas, 355; Railway v. Howard, 13 How. (U. S.), 344; Fox v. Harding, 7 Cush., 522, 523; Masterson v. Brooklyn, 7 Hill, 67; 1 Suth. on Dam., p. 113, et seq.

2.   The court erred in that part of its charge wherein it attempted to give the jury the rule by which to measure plaintiffs' damages, which is as follows:   "In estimating the damages, if any, you may consider plaintiffs' expenses for such necessary men and teams as they had on hand at the time, the value of the services of same, loss of time," etc.; because the same is so general, indefinite, and obscure as to be unintelligible, and because so far as it is intelligible it gives to the jury an erroneous measure of damages, in that it allows them to give to plaintiffs the entire expenses that they were at for men and teams, and in addition the value of the services of said men and teams, which is an instruction to find double damages, and in addition thereto such profits as plaintiffs might or could have made but for such delays.   Hudson v. Morriss, 55 Texas, 610; Railway v. Greenlee, 62 Texas, 349.

3.   If said indemnity bond was sufficiently broad in its terms to cover the claim made by defendants over against the railway company, and defendants could have shown that it was not intended to cover the same, and that the cause of action set up in this case was not one of those intended to be released, receipted for, and indemnified against by said bond; and that the railway company fully understood this when it was executed, and acquiesced in its interpretation of said bond for more than three years, and recognized its liability to defendants for any damage recovered against them by plaintiffs on account of the alleged delays, said bond should have been eliminated from the case and was no bar or obstacle to defendants' recovery over against said railway company, and defendants should have been allowed to show these facts; and without making any allegation or proof of fraud, accident, or mistake in said construction contract.   Taylor v. Bland, 60 Texas, 29; Peck v. United States, 102 U. S., 65; Whart. on Con., secs. 653, 657, 659; 1 Greenl. on Ev., secs. 277–286; Starkie on Ev., *679; 2 Whart. on Ev., secs. 941, 944, and note to sec. 940, 3 ed.; Abb. Trial Ev., pp. 294, 509, 526.

*Alexander & Clark*, for appellees.— 1. (1) A party is estopped from denying a fact which he has willfully induced another to believe and to act on the belief so as to alter his own previous position, and who would be prejudiced if the admission of the fact was retracted. Illies v. Fitzgerald, 11 Texas, 429; Love v. Barber, 17 Texas, 312; Williams v. Chandler, 25 Texas, 4.

(2) In the absence of fraud, accident, or mistake, parol evidence is not admissible to contradict or vary the terms of a valid written instrument. Rockmore v. Davenport, 14 Texas, 602; Reid v. Allen, 18 Texas, 241; Railway v. Garrett, 52 Texas, 133.

(3) The best evidence is to be produced which the nature of the case admits. Cotton v. Campbell, 3 Texas, 493; McAlpin v. Ziller, 17 Texas, 508.

(4) A provision in a construction contract to the effect that the contractor must execute a release of all claims or liabilities before receiving the engineer's final estimate entitling him to pay, is binding and conclusive, and is a valid stipulation. Railway v. McCullough & Co., 12 Gratt., 595; Railway v. Woods & Co., 14 Gratt., 447; Railway v. Lafferty, Id., 478.

2. A clause in a contract providing for the submission to the chief engineer of one of the parties for final decision disputes upon matters involved in its execution, is valid. It is a condition precedent, and the contractor must show a compliance therewith, or that he is not bound by the decision of the engineer because of fraud or mistake. Railway v. March, 114 U. S., 549; United States v. Robeson, 9 Pet., 371; Keller v. McCauley (Pa.), 18 Atl. Rep., 607; McMahon v. Railway, 20 N. Y., 463; Canal Co. v. Coal Co., 50 N. Y., 258; Jackson v. Cleveland, 19 Wis., 400; Reynolds v. Caldwell, 51 Pa. St., 305; Snell v. Brown, 71 Ill., 142; Construction Co. v. Storet, 8 Colo., 61.

HENRY, ASSOCIATE JUSTICE.—This suit was brought to recover damages by the appellees.

Plaintiffs' petition charged, that J. F. O'Connor & Co. had, prior to the 1st day of September, 1886, contracted with the Dallas & Greenville Railway Company to grade and repair its roadbed for laying its track between the cities of Greenville and Dallas, and that on said date said defendants contracted to sublet to plaintiffs the forty-second, forty-fifth, forty-sixth, and forty-seventh miles of said work, for which defendants agreed to pay plaintiffs 11½ cents per cubic yard; that defendants contracted and undertook that plaintiffs should be allowed to do said work in accordance with the usage and custom prevailing in railway construction, and that defendants would cause to them no unnecessary delay or hindrance in the performance of said work; that the usage and custom then prevailing in said business was, that such work as plaintiffs had contracted to do was required to be done ac-

cording to certain measurements and directions made and given by the railway company's engineer, which were known in such business as "cross-sectioning;" that it was by custom and usage the duty of the chief contractor to have this engineering work done in such time as not unreasonably to delay the subcontractor; that the contract between plaintiffs and defendants was made with reference to said custom, which thereby became a part of it; and also that defendants specially and expressly undertook and agreed to have said cross-sectioning done as aforesaid, but that they failed to perform their said contract, and did not procure said cross-sectioning to be done promptly, so that plaintiffs were unreasonably and unnecessarily delayed during the periods named in plaintiffs' petition, aggregating twenty-five days, by which delays plaintiffs were damaged as follows:   By hire of teams and wages of men paid by them during said period of delay, $2110.50; reasonable value of gains lost during periods of delay aforesaid, $2000. Plaintiffs likewise allege, that defendants further broke their said contract by refusing to allow them to perform the work agreed to be done on the forty-second mile, and let the same to another; that they could have performed said work for 10 cents per cubic yard; that there were 20,000 cubic yards in said mile, on which they would have made a profit of $1\frac{1}{2}$ cents per cubic yard; that by reason of this breach of the contract they were damaged $300.

Defendants answered said petition with a general denial, plea of settlement and receipt in full, and set up the construction contract between defendants and the railway company; and averred, that under said contract defendants had agreed to construct said railway in accordance with the plans and directions of the company's engineer; that it was the universal custom in railway construction that the railway should be constructed under the supervision and in accordance with the directions of the railway company's engineer, who was the agent of the company, paid and controlled by it; and wholly beyond the control of the contractor; that there was no custom allowing the subcontractor to look to the chief contractor for any damage done him by delays arising out of the conduct or directions of the engineer, and that plaintiffs were fully advised of the terms of aforesaid contract and said custom at and before the time they entered into said subcontract.   Defendants further pleaded, that if plaintiffs had been delayed and thereby damaged as alleged, that the same was through no fault of theirs and was the breach of no contract by them made with plaintiffs, but was the fault of the Dallas & Greenville Railway Company, and asked that said company be made a party and required to answer, and that defendants have judgment over against said company for any damages that plaintiffs might recover against them by reason of aforesaid delays.

Plaintiffs replied to defendants' answer by supplemental petition, and alleged that the receipt given by them to defendants was not intended to cover their demand for damages asserted in this case, and as to said demand was without consideration.

The railway company appeared and pleaded a general denial of all the allegations of both plaintiffs and defendants, a release of and bond of indemnity against defendants' claim over against it, statute of limitation, certain provisions of the construction contract between defendants and the railway company, which it was alleged precluded defendants from recovering over against said company; and further, that plaintiffs could have obtained ample work outside of their contract during the periods of alleged delay, and thereby prevented the damages, if any, occasioned by said delays.

Defendants replied to aforesaid pleading of the railway company, alleging that said company had waived the requirement of the construction contract that no work should be sublet without the consent, in writing, of the railway company's engineer, and that said company was estopped from setting up the same; and in the third clause of said reply defendants pleaded, that the bond of indemnity set up by said railway company did not in terms cover the cause of action sued upon; and that if its language did cover said cause of action it was not intended so to do, and was not one of the claims or causes of action intended to be released or indemnified against; and that said company so understood it, and recognized, up to June, 1890, when it filed its amended pleading herein, its liability to defendants for any damage plaintiffs might recover against them on account of the delays complained of by plaintiffs. Defendants also pleaded a general denial.

The case was tried November 22, 1890, and resulted in a verdict in favor of the railway company against defendants, and in favor of plaintiffs against defendants O'Connor & Co. for $1000, whereon the court entered judgment in favor of plaintiffs against J. F. O'Connor & Co. for $1000 and costs, and that said railway company go hence without day and recover of said O'Connor & Co. its costs.

Plaintiffs' damage, as itemized in their pleading, consisted of the hire of teams and men which they were obliged to keep and pay during the several periods of delay, aggregating $2110.50; reasonable value of earnings lost during said periods, $2000; and profits lost on the forty-second mile by refusal of defendants to allow plaintiffs to do the work, $300. Total damage claimed, $4410.

E. E. Smith, one of the plaintiffs, testified to the various delays and the number of men that plaintiffs had on hand during each period of delay and the wages paid them; to the number of teams plaintiffs had on hand during said periods of delay, which teams he stated they owned, but could have hired for $3 per day. He also testified to the value of his own services, which he put at $100 per month, and the

profits lost by not being allowed to grade the forty-second mile, which profits he put at $225.  Plaintiffs did all the work contracted for except the forty-second mile, and that was sublet when plaintiffs got upon the ground.  Plaintiffs then sought to show what profits they could or might have made at other work if they had not been delayed, showing how many cubic yards of earth their outfit could have moved per day, and what profit there would have been per cubic yard in it.  Defendants objected to all questions directed to eliciting such testimony, on the ground, among others, that the profits sought to be proved were too remote, uncertain, and speculative to form the basis of legal damages; but the court overruled defendants' objections, and the witness testified that one scraper team could move fifty cubic yards of earth per day, and that there was a profit of at least 2½ cents per cubic yard in it; that plaintiffs had about twenty such teams idle twenty-six days, and that they could have moved fifty cubic yards of earth per day per team, at a profit of 2½ cents per cubic yard.

When witness left the stand defendant moved the court to withdraw from the consideration of the jury, on the grounds on which they had objected to its admission, the evidence as to said profits that might have been made but for said delays; but the court overruled said motion.  Defendants requested the court to give to the jury special charges directing them to disregard all evidence as to the profits plaintiffs might have made but for said delays, but the court refused said charges.

The appellants assign errors upon the admission of the evidence and charge, under which they present the following proposition:  "Where a contractor has been allowed to perform under his contract the work agreed to be done by him and has received the contract price therefor, but has been unreasonably hindered and delayed in its performance by the fault of the other party, he can not recover as damages for said hindrance and delay the profits that he might have made by his business or calling on other work if he had not been so delayed."

We think the proposition correctly states the law, and that the evidence objected to should have been excluded.  The profits that may be considered in giving damages for a breach of contract are such only as are the direct and immediate fruits of the contract entered into between the parties to it.  "They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed perhaps the only inducement to the arrangement;" but the loss of profits that may result from collateral enterprises are regarded as too remote to be considered.  1 Suth. on Dam., 115.  The application of this rule to the case before us admits of the proof of the loss of the profits that would have resulted from carrying out the contract with regard to the forty-second mile, because that was part of the sub- ject of the contract, but not of what would have resulted from other

work.    Masterson v. The Mayor, etc., 7 Wend., 61; Fox v. Harding, 61 Mass., 522; Railway v. Shirley, 45 Texas, 355.

The court charged the jury on the measure of damages: "In estimating the damages, if any, you may consider plaintiffs' expenses for such necessary men and teams they had on hand at the time, the value of services of same, loss of time," etc.

It is contended that this charge was improper, because under it the jury could have allowed to plaintiffs double damages. We do not think that it should have been given. As it will probably not be repeated on the next trial, it may be sufficient for us to say now that the charge should be limited to the state of case made by the evidence. If the men and teams were hired and not maintained, the hire alone can be estimated. If the teams were owned by the plaintiffs, the value of their use or hire alone should be considered. When the plaintiffs shall be allowed the value of the services of the teams and the hire of the men, they can not be allowed an additional compensation for the loss of their time.

There was a written contract between J. F. O'Connor & Co. and the railway company, which among other provisions contained the following:

"Upon the completion of all the work herein contracted for in the time and manner agreed upon, the engineer shall make a final statement of all the work done, from which shall be deducted the sum of the payments theretofore made on the monthly estimates, and the residue shall be paid by said company to said contractors, upon their receipting for the same in full upon said final estimate, *and rendering clear receipts to the party of the first part from all subcontractors and employes on said work*, and owners of material used, releasing the party of the first part (the railway company) from all liabilities to said subcontractors, laborers, or owners of material used."

It is further agreed, that "In case the company shall be delayed in acquiring the title to the lands required by the road, or for any other reason, the contractors shall not be entitled to any damages by reason thereof, but shall have such extension of time for the completion of the work as the engineer may deem proper, not to be less, however, than the time lost by the delay."

The court charged the jury, that "the evidence fails to show any liability upon the part of said railway company, and you are instructed to return a verdict in its favor."

The record does not show upon what view of the facts the court predicated this charge. We do not think that the clause of the contract last quoted, in regard to the delay, can be held to have application to the matters in controversy in this suit. The delay therein provided for is one that the railway company might suffer, and not one that it should cause. The clause does not require or admit of explanation of parol evidence. For the purposes of this case the chief engi-

neer stood in the place of the corporation, and his delay, whether justified or not, was the act of the railway company.   But the other clause of the contract quoted above does, we think, apply to this controversy, and is a complete defense for the railway company.

The railway company had made a final settlement with the contractors J. F. O'Connor & Co., in consideration of which O'Connor & Co. had executed to the railway company a bond conditioned that they should "hold harmless the said Dallas and Greenville Railway Company from all claims or suits for work or labor done and material provided on said work, or for damage done in the construction thereof."

It is contended in behalf of O'Connor & Co., that all rights of action in favor of the railway company were merged in this bond upon its execution, and that they have now no cause of action upon the contract. It is contended by the railway company, that the conditions of the bond apply to the issue between it and O'Connor & Co., and preclude any recovery by them.

We do not think that the conditions of the bond are applicable to the issue in controversy between the railway corporation and the original contractors.   The scope of the obligation is plainly defined and limited by its own language, and this not being a suit "for work or labor done," for "material provided," nor for "damage done in the construction" of the railway, it is not affected by the obligation.   Before the execution of the bond the railway company held back a balance earned by O'Connor & Co. to secure it in the final performance by them of their contract.   This security they surrendered and accepted the bond in lieu of it.   The bond does not recite, and it was not otherwise shown, that it was the purpose of the parties to cancel any portion of the contract not also embraced by the bond.   The parties could agree to change the security, or to release it entirely and have none, without discharging or changing any of the obligations of the contract.   They could release the security held by them for the performance of some of the obligations of the contract and change it for the others.

It is our opinion that the court did not err in charging the jury to find in favor of the railway company against the defendants J. F. O'Connor & Co.

The judgment will be affirmed as to the railway company and reversed as to Smith & Gething, and the cause as to them remanded.

> *Affirmed in part, and reversed and remanded as to the litigation between the plaintiffs and the original defendants.*

Delivered March 11, 1892.

A motion for rehearing was refused at the Austin Term.