## PITT CONST. CO. v. CITY OF DAYTON.

(Circuit Court of Appeals, Sixth Circuit. November 16, 1916.)

No. 2798.

**1. PLEADING ☞343—JUDGMENT ON PLEADINGS—RIGHT TO.**

In an action on contract, where defendant's answer set up provisions of the contract relied on to defeat recovery, judgment on the pleadings cannot be granted for defendant, unless some provision of the contract as a matter of law precludes recovery.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1048–1051; Dec. Dig. ☞343.]

**2. MUNICIPAL CORPORATIONS ☞374(1)—PUBLIC IMPROVEMENTS—CONTRACTS—CONSTRUCTION.**

A contract for the extension and improvement of a waterworks system obligated the municipality to furnish a right of way for a pipe line. Other portions of the contract provided that the price should cover all loss or damage arising out of the nature of the work, or from any unforeseen obstructions or difficulties, as well as all risks of any description; that if the contractor should be stopped by an injunction within the time in which he should finish, the work should be extended by as many days as he was stopped, but that if he should be stopped more than three months, the municipality might annul the contract, and that the contractor should accept orders for extra work not included in the contract necessary to the improvement or connected therewith, but that no claim for extra work or materials should be allowed unless ordered and the price agreed upon before the work was done or finished. *Held*, that where the municipality did not furnish the right of way as the contract required, and its failure seasonably to obtain the right of way damaged the contractor, it cannot escape liability for injuries resulting from delay in obtaining the right of way; the provisions relating to loss to the contractor not referring to a breach of the contract by the municipality.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. ☞374(1).]

**3. MUNICIPAL CORPORATIONS ☞374(2)—PUBLIC IMPROVEMENTS—CONSTRUCTION OF CONTRACT.**

Another provision of the contract declared that all claims for damages or for any other matter or thing for which the contractor might consider himself entitled to extra remuneration, must be made in writing to the director of public service within 14 days from the time the damages or other matters occurred, or the cause for the same should arise, and unless so made, the claims should be waived. *Held*, that in view of the situation of the parties, the provision as to waiver of claims does not apply to a claim for damages arising out of the municipality's own breach of contract in failing to furnish the right of way until after the time for performance of the contract had expired; this being true though the municipality had grounds for believing that it owned the right of way.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. ☞374(2).]

**4. CONTRACTS ☞169—CONSTRUCTION—GENERAL LANGUAGE.**

General language of contracts must be construed with reference to the fitness of the subject-matter and person.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 752; Dec. Dig. ☞169.]

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John E. Sater, Judge.

Action by the Pitt Construction Company against the City of Dayton. There was a judgment for defendant on the pleadings, and plaintiff brings error. Reversed.

W. B. Turner, of Dayton, Ohio, for plaintiff in error.

W. H. McConnaughey and John S. Shea, both of Dayton, Ohio, for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and SESSIONS, District Judge.

WARRINGTON, Circuit Judge. The Pitt Construction Company, a Pennsylvania corporation, and the city of Dayton, state of Ohio, entered into a written contract, September 16, 1912, for an extension and improvement of the waterworks system of Dayton. The Construction Company was to furnish the material and perform the labor in constructing a line of cast-iron water pipe, with proper connections, along a particular course between the pumping station and the reservoir of the city, including standpipe foundations, according to specifications, plans, and drawings, and for prices attached to the several items as stated in the accepted proposal. In consideration of this the city undertook to furnish the right of way for the improvement, and also to pay the prices named for such material and labor. The improvement was completed to the satisfaction of the city, and was paid for according to prices named, and provided for in the contract; and those features of the contract are not involved in the present controversy.

In the suit below it was sought to recover damages for alleged delay and neglect of the city in furnishing a right of way for a substantial portion of the improvement. The items of damage so alleged are as follows:

(1) Increase in cost of excavation from 72 cents to $1.12 per lineal foot, amounting to $2,168.

(2) Increase in cost of laying pipes from 15 cents to 25 cents per lineal foot, amounting to $542.

(3) Cost of pumping water from the trenches, which would not have been required if such delay and neglect had not occurred, amounting to $2,072.48; cost of supplies required for such pumping, $1,404.17; cost of new pumping equipment, $358.97.

(4) Increase in cost of labor in the sum of $1,396.99.

(5) Cost and expense incurred in management of the business and in keeping the equipment and organization at Dayton instead of elsewhere, in the sum of $4,050.

(6) Cost of moving machinery and appliances from one portion of the improvement to another portion, which but for such delay and neglect would have been unnecessary, $138.60.

(7) A profit of 10 per cent. upon the item of labor and that of pumping, amounting to $346.30.

The alleged consequences of such delay and neglect, as respects the items of damage so claimed, will be better understood through further statement of the terms of the contract and the extent of the delay complained of. The contract required the contractor to commence the work within 30 days after its date, September 16, 1912, and to complete the

improvement by June 1, 1913; and failure in this behalf in terms rendered the contractor liable for wages of inspectors at the rate of $3 a day for each, and for the further sum of $25 a day, not as a penalty, but as liquidated damages, and such sums were to be deducted from moneys accruing to the contractor. The contractor, under direction of the city, placed its equipment in position to commence work September 30, 1912, upon what was known as "Station 53" in the proposed line of improvement, but was on that day prevented from proceeding with the work by an order of injunction issued against the city and the contractor alike, in a suit commenced by Joseph E. Bimm in the Montgomery common pleas court. It developed that the city did not own a right of way for such an improvement as this along the line of Station 53. This resulted in an order on the part of the city, directing the contractor to remove its equipment to another portion of the line, and along which the city owned the right of way. The contractor carried out this order, and there commenced the work. December 19, 1912, the city instituted a proceeding in the Montgomery county probate court to appropriate the right of way through the land in which Bimm claimed an interest; on February 19, 1913, the value of the interest taken and the damage to the residue were assessed at $9,841; and on May 19th final judgment was entered. The judgment, however, was not paid until the following July 2d, a month succeeding the expiration of the period within which the contractor was to complete the improvement. The city's delay in so acquiring the right of way is alleged to have prevented completion of the improvement until December 22, 1913.

The city met these allegations by answer containing ten separate defenses. In its first defense the city set up the written contract above pointed out, admitting, however, prevention from doing the portion of the work which was embraced in the injunction suit of Bimm, that on December 19, 1912, it commenced proceedings to appropriate that portion of the right of way, and that on July 2, 1913, it paid the money assessed therefor, but denying generally all other allegations of the petition. The first defense was pleaded by reference thereto in each of the succeeding defenses; but those defenses each contain additional matter. The second defense alleges that the cost of removing the contractor's equipment from Station 53 to another portion of the work was agreed by the parties to have been the only effect of the injunction, and that such expense was paid in full settlement of all claims arising in that behalf. The third defense alleges that when plaintiff resumed work on the portion of the improvement east of Station 53, it complained of an excess of water in the trench, of losses on account of the delay caused by the city, extra work, high prices of labor, etc., and that these claims were thereupon settled and discharged by an arrangement for changing to the advantage of the contractor the grade along which the pipes were to be laid, and that this arrangement was carried out. The fourth, fifth, sixth, and seventh defenses set up, respectively and in the following order, certain provisions of sections 21, 34, 33, and 31 of the contract, and so present questions of law rather than of fact. These questions will, so far as necessary, be con-

sidered later. The eighth defense denies certain allegations contained in the petition, to the effect that the city, through its officers, had falsely represented to the plaintiff that it had secured the right of way for the improvement, and had so induced plaintiff to enter into the contract, and thereupon avers that the city had, for a consideration, secured the right of way in dispute from a railroad company, and that the. city solicitor had advised the city that Bimm (plaintiff in the injunction suit mentioned) had no valid claim against it in respect of such right of way. The ninth defense, in effect, alleges as a bar to recovery the total payment made and 'received under and according to the contract, and, further, that plaintiff's losses were due "to natural conditions attending the work, the incompetency of plaintiff's employés and the flood of March 25, 1913," and for which defendant denies responsibility. The tenth defense, in substance, recites the city's right in terms reserved in the contract to recover of plaintiff the wages paid to inspectors, and also the penalty of $25 a day during the contractor's delay in completing the improvement, amounting in all to $5,000, and alleges that it was agreed between the parties that the city's waiver of this sum, together with its payment of the other sums mentioned in the answer, should be and were accepted in full discharge of all claims of every kind and character. The issues were closed by plaintiff's reply. This consists of denials of new matter set up in the answer, and also of averments in apparent answer to the sixth defense (which, as before stated, relied on section 33 of the contract), to the effect that plaintiff had complied with section 33 of the contract, requiring claims for damages or extra remuneration to be made in writing to the director of public service of the city within 14 days from the time the damages or other matters might occur.

[1, 2] The case was disposed of below through allowance of a motion of defendant for judgment upon the pleadings, and the question presented here is whether this motion was rightly granted. It is manifest that these pleadings. are not open to a motion for judgment unless there are one or more provisions of the contract which forbid the recovery sought; and this was the theory of the decision below. We have seen that certain sections of the contract are, in substance, set out and relied on in the fourth, fifth, sixth, and seventh defenses of the answer. In considering the portions of the contract pleaded in these defenses, it is to be borne in mind that plaintiff's action is bottomed upon the admitted failure of the city to furnish a material portion of the right of way until the time fixed for completion of the improvement had expired. We have seen that it was the belief of its official agencies that the city owned this part of the right of way at the date of the contract; this is the obvious effect of the eighth defense. However, the city's mistake as to its title did not lessen the obligatory force of the covenant contained in the contract: "The city of Dayton will furnish the right of way for said improvement." Since the contractor was bound, under distinct penalties in the form of liquidated damages, to. complete the improvement by June 1, 1913, this covenant of the city could have only one ultimate meaning: The city obligated itself to furnish the right of way seasonably. This obligation was fundamen-

tal; for, unless it was performed, the improvement could not be completed within the allotted time. It, therefore, needs only to be stated that the city's failure in any material degree to perform the obligation was a violation of a vital portion of the contract. The precise inquiry, therefore, is whether any contractual provision set up in the defenses mentioned, or, indeed, any other portion of the contract, was intended to apply to damages arising from the city's own breach of its covenant seasonally to furnish the right of way.

(a) The fourth paragraph of the answer sets out section 21 of the contract as a defense. That section, in substance, provides that the total price named in the contract shall be paid and received as full compensation for everything furnished and done thereunder; that the price shall also cover—

"all loss or damage arising out of the nature of the work" or "from any unforeseen obstructions or difficulties encountered in the prosecution of the work, and for all risks of any description connected with the work, and for all expenses incurred by, or in consequence of, the suspension or discontinuance of the work as herein specified."

(b) In the fifth defense reliance is placed on section 34 of the contract. It is there provided:

"If the contractor be stopped * * * by an injunction, then the time within which he is to finish the work, shall be extended by as many days as he is stopped; provided, * * * that if he be thus stopped more than three (3) months, the director of public service shall have the right to annul said portion of this contract; and in case said portion be so annulled, the contractor shall be paid for the amount of work he has done upon that portion of the contract so annulled. In no case will any damages be allowed the contractor if the work be thus stopped."

(c) The sixth defense is founded in part on section 33, which provides:

"All claims for damages, or for any other matter or thing for which the contractor may consider himself entitled to extra remuneration, must be made in writing to the director of public service within fourteen (14) days from the time the damages or other matters occur, or the cause for the same arises; and unless such claims are so presented it shall be held that the contractor has waived such claims, and shall not be entitled to claim or receive any pay for the same."

(d) In the seventh defense section 31 is relied on. This section provides:

"The contractor will be obliged to accept orders for extra work not included in this contract, necessary to be done on the work, or connected with the same. * * * No claim for extra work or materials will be allowed unless it is ordered * * * and the price is agreed upon in a written agreement, before the work is done or the material furnished * * *. If no fixed price can be agreed upon * * * the extra work must be paid for on the basis of ten (10%) per cent. in advance of the actual cost * * * as determined by the engineer."

The learned trial judge in effect held that the provisions of sections 21, 31, and 34 were not designed to excuse the city from the necessary consequences of its own breach of the covenant to furnish the right of way. We are satisfied that this conclusion is sound. The views of the trial judge concerning the provisions of sections 21, 31, and 34 are

sufficiently disclosed in the following portions of his opinion relating to section 34:

"When the defendant stipulated that the contract should be completed by June 1, 1913, and that it would furnish the right of way, it obligated itself so to furnish such right of way as to admit of the completion of such contract on the date named. Section 34 relates to a stoppage caused by some wrongful conduct or act (real or alleged) of the plaintiff and for which the city was not responsible. It does not say 'if the contractor and the city be stopped,' etc. It does not cover a stoppage arising from an error or wrongdoing of the city. It would be a harsh construction which would give the city a right to annul the plaintiff's contract on account of something for which it was in no sense responsible, and which the city itself was bound to do. If the city intended to reserve the right to turn the contractor out, and possibly after he had made all the preparation and incurred all the expense incident to proceeding with and completing his work, it should be so provided in plain terms. If the meaning of section 34 is what the defendant claims, the contractor, however innocent and however much injured by some wrongful or negligent act of the city, is turned away empty handed. This would be casting the loss on the wrong party. * * *

"The contract does not give the city the right to suspend the work pending the acquirement of the right of way, or to extend the time of completion on account of delay in obtaining such right of way. The city did not protect itself in either of these respects. It did not have in contemplation a delay in securing a right of way which would defer the completion of the contract beyond June 1, 1913."

[3, 4] However, the trial judge held that section 33, relied on in the sixth defense, was applicable to the instant case, and that its requirement to present claims for damages within 14 days from the time the right thereto arose had not been observed. But is section 33 applicable? It must be conceded that its language is in form broad; though it is not express, it is general, as respects the present issue. This is true also of those portions of the other sections which were held below to be inapplicable. And if the principle is sound which was there applied in construing the other sections, it is hard to see why the same principle should not also constitute the rule for construing section 33. The section was designed to accomplish some purpose, and so must be given reasonable effect. The contract provides for supervision of the work through directions of specified officials of the city; and it may well be, for instance, that causes for "damages" or "extra remuneration" within the meaning of the section might have arisen through the city's failure rightly to supervise and direct the mode of distributing the materials or of conducting the work itself, and so have entitled the contractor to recover such damages or extra remuneration only by presenting written claims therefor to the officer named and within the time fixed by the section. We do not pause to consider or to pass upon the nature or unreasonableness of a supervision, or of other more or less obvious causes, which would have necessitated the presentation of written claims. The object is simply to indicate a reason for the use of the language contained in section 33. We are confronted with an entirely different question, however, when we are brought to consider the city's violation of a fundamental provision of the contract. It is as true now as it ever was that general language of contracts, as well as statutes, "shall be restrained unto the fitness of the matter and the person." It was said of section 33 by the trial judge that: "It was

competent for the parties thus to stipulate." Admission of this, however, is not decisive of the question. The contention is that, by the language here employed, the parties actually meant to include "damages" or "extra remuneration" based on a breach committed by the city itself of an essential provision of the contract. To contend that such a breach was within the contemplation of the parties is to say the city might break the contract as to a matter which underlay the whole contemplated work and still insist that the contractor should be bound by the contract; in other words, it is to say that the parties understandingly and intentionally declared by the language of section 33 that through the contractor's nonobservance of the 14 days' limitation the city could escape the consequences, indeed take advantage, of its own wrong. This is to strain, not rationally to interpret, the language. The fundamental undertakings of the city were two, one to furnish the right of way and the other to pay for the improvement. The one was as necessary to the end to be achieved as the other; and we cannot think that, when using the language of section 33, the city's breach of its covenant to furnish the right of way, any more than a breach of its promise to pay for the improvement, was within the contemplation of either of the parties. These views would entitle plaintiff to recover, notwithstanding the language of section 33, if it should be proved that the damages claimed were the direct result of the city's breach of its covenant to furnish the right of way; for damages of that kind must be treated as falling outside of the contract. This conclusion is, in principle, sanctioned by well-considered decisions.

In Wood v. Ft. Wayne, 119 U. S. 312, 321, 322, 7 Sup. Ct. 219, 224 (30 L. Ed. 416) Wood had contracted to supply the materials, except "special castings" which were to be furnished by the city, and the labor in constructing waterworks for the city of Ft. Wayne. In the course of the work the city changed the place of crossing the river, altering the plan accordingly, and so imposed upon the contractor a large increase in cost of crossing. The city supplied some defective castings, which resulted in damages to the contractor through delay and additional expense. The nature of the objections urged to the right of recovery in consequence of the city's alteration of the plan and of the expense and delay attending the supply of the defective castings, and also the provisions of the contract relied on by the city, appear in the following portions of the opinion:

"The provision that all loss or damage, arising 'from any unforeseen obstructions, or any difficulties that may be encountered in the prosecution of the' work, 'shall be incurred by the contractor without extra charge' to the city cannot fairly apply to the obstructions and difficulties at the changed place of crossing, resulting from the increased depth of water and the quicksand.

"As to the claim for the $750, the 'special castings' were to be supplied by the defendant from a manufacturer at Ft. Wayne, and not by the plaintiffs. * * * The defendant contends that the clause in the contract which provides that the plaintiffs 'shall have no claim upon the city for any delay in the delivery of pipes or other materials from the manufacturers,' throws the loss from these defects on the plaintiffs. But we do not so think. * * * Nor does any work done by the plaintiffs in altering the castings come under the head of such extra work as required a written order."

The principle of that decision as respects the responsibility of an employer for its own act of changing a plan or for delay and neglect in furnishing something the employer agreed to supply was applied by this court in Wyandotte & D. R. Ry. v. King Bridge Co., 100 Fed. 197, 205, 40 C. C. A. 325, the present Mr. Justice Day saying in respect of abutments which the townships were bound to locate:

"The matters which we have referred to, the work necessitated by the settling of the pier, the wrong location of the abutments, which it was the duty of the authorities to properly locate for the bridge company, are entirely outside of the contract, not within the scope thereof, or in the contemplation of the parties when the contract was signed. They are not within the class of 'extras' which it was the intention of the parties to prohibit unless provided for in writing."

In Gearty v. Mayor, etc., of New York, 171 N. Y. 61, 72, 74, 63 N. E. 804, 807, an action for damages for breach of contract, the city, through its proper officer, had given an order to take up and replace certain street paving, which order was proved to be an arbitrary exercise of power and a breach of the contract; and, in spite of a provision of the contract requiring an engineer's certificate and its filing with the department as a "condition precedent" to the right of the contractor to payment, it was held:

"It is insisted on behalf of the city that the plaintiff, by obeying the orders of the engineer of construction, requiring him to take up and relay the alleged improper work, without making any claim for extra compensation at the time the changes were ordered or made, or without making a new contract, has waived any claim, if he was entitled to any, to extra compensation. This proposition assumes, erroneously, that the plaintiff is seeking to recover extra compensation under the contract. This action is to recover damages for breach of the contract. * * * If this were an action for extra work under the contract, such a certificate would be necessary, but as already pointed out, this is an action to recover damages for a breach of the contract, and the provision requiring a certificate has no application."

In Roemheld v. City of Chicago, 231 Ill. 467, 472, 83 N. E. 291, 293, it was held that additional labor and expense required under changed plans and drawings for the work in hand did not fall within the meaning of a provision in the contract requiring "extra work" to be done only in pursuance of a "written order"; the court followed the rule laid down in Wood v. Ft. Wayne, supra.

In O'Connor & Co. v. Smith & Gething, 84 Tex. 232, 238, 19 S. W. 168, 170, O'Connor & Co. had contracted with the Dallas & Greenville Ry. Co. to grade and repair its roadbed, and had on the same date contracted with Smith & Gething to sublet to them a portion of the work and also to have certain cross-sectioning done to enable the subcontractors to proceed with the work. The principal contractors delayed this work, and the suit was in part to recover damages for such delay. It was provided by the contract between the principal contractors and the railway company, subject to which the subcontractors undertook their work, as follows:

"In case the company shall be delayed in acquiring the title to the lands required by the road, or for any other reason, the contractors shall not be entitled to any damages by reason therof, but shall have such extension of time for the completion of the work as the engineer may deem proper, not to be less, however, than the time lost by the delay."

This provision was interposed to defeat the claim of the subcontractors, but it was held to be inapplicable to delay caused by the railway company itself through the principal contractors, the court aptly saying, 84 Tex. 238, 19 S. W. 171:

"We do not think that the clause of the contract last quoted, in regard to the delay, can be held to have application to the matters in controversy in this suit. The delay therein provided for is one that the railway company might suffer, and not one that it should cause."

See, also, Sheehan v. Pittsburg, 213 Pa. 133, 134, 62 Atl. 642; Horgan v. Mayor, 160 N. Y. 516, 522, 523, 55 N. E. 204; Roberts v. Bury Commissioners, L. R. 5 C. P. 310, 327, 331, 333; Lawson v. Wallasey Local Board, L. R. 11 Q. B. Div. 229, 238, 239. It is to be observed of Sheehan v. Pittsburg, supra, that the city was held liable in damages for failure to obtain complete right of way for a street improvement where the contract was based on the "assumption by both parties" that such right of way had been secured, yet the contract required the contractors to bear "all loss or damage" arising from "unforeseen * * * difficulties" and from "any hindrance or delay from any cause" even though such cause might justify extension of the time allotted for completing the improvement. The theory of the decision was that such language was not applicable to the city's failure to secure a complete right of way. No difference in principle is perceived between an assumption of present ownership and a present contractual obligation seasonably to acquire ownership of a right of way, or between the consequence of a failure in the one case to possess such ownership, and of the failure in the other to acquire such ownership, so as in either case to admit of completion of the work within the time allotted. And in Roberts v. Bury Commissioners, supra (at page 331), it was held that a power reserved to the commissioners to determine the contract by written notice, etc., would not enable them to "acquire, by means of their own wrongful act or default, the right to enforce" the provision, since they could not (at page 333) "take advantage of their own wrong." Further, we do not find any decision which holds that a municipality, or other employer, may resort to provisions of a contract like or similar to those of the present one to defeat a suit for damages caused by the employer's own breach of a vital portion of the contract.

We appreciate the reason why public corporations employ elaborate provisions in their improvement contracts to guard their interests against unjust claims; familiar experience proves that they need such protection. This has resulted in the development of a wide range of contractual provisions looking to the protection of the public interests; indeed, a similar development has, in large measure, reached the domain of private contracts. It is equally well known that these provisions are aimed generally against the contractor and with a view of limiting the cost of an improvement to the sum agreed upon and such additional sums as are specially provided for. Still we are not aware of any sound rule or policy that would permit an employer to use such general provisions of a contract as are here found, to shield himself against damages inflicted by his own breach of a covenant made by him and of as vital a character as the present one. Assuming that he

may legally do so, if an employer wishes to protect himself against his own failure to keep such covenants, he must distinctly say so; and he must advise the contractor of this purpose through specific provision set out in the contract. Roberts v. Bury Commissioners, supra, at page 327. This has not been done here; and in view of the obvious fairness of expressly declaring such a purpose and of the rule of judicial decision before pointed out, we must hold that the contract does not apply to the damages claimed.

It is not necessary to pass upon other questions presented by counsel. Accordingly, the judgment will be reversed, with costs.