**NORTHEAST CLACKAMAS COUNTY ELECTRIC CO–OPERATIVE, Inc., a Corporation, Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, a Corporation, and S. H. Ripp, doing business as Ripp Electric Company, Appellees.**

**S. H. RIPP, doing business as Ripp Electric Company, Appellant,**

v.

**NORTHEAST CLACKAMAS COUNTY ELECTRIC COOPERATIVE, Inc., a Corporation, Appellee.**

**No. 13740.**

United States Court of Appeals Ninth Circuit.

April 6, 1955.

[redacted]

Kell & Hamilton, Raymond M. Kell, Floyd D. Hamilton, William E. Dougherty, Portland, Or., for Northeast C. C. E. Co-op., Inc.

Robert Clapperton, Portland, Or., for Ripp. Conley & Greene, James L. Conley, Portland, Or., for Continental Cas. Co.

Before HEALY and POPE, Circuit Judges, and BOLDT, District Judge.

BOLDT, District Judge.

Appellant Cooperative is an Oregon corporation; appellee Casualty company, is a Maryland corporation; and the individual party Ripp is a resident of Oregon. The parties are referred to herein as Co-op, Surety and Contractor.

Co-op issued invitations to contractors for bids on construction of about 17 miles of power transmission line partly over mountainous terrain in Clackamas County, Oregon. Much of the right-of-way of the line was heavily timbered. Originally Co-op proposed that the contract work include right-of-way clearing and the Proposal to Bidders provided exacting specifications therefor. Later Co-op decided to clear the right-of-way by its own operations leaving to the contractor only the furnishing of labor and equipment for construction of the line. Co-op was to furnish all of the materials required in the construction. At the first bid opening Contractor was present when a discussion of right-of-way clearing occurred, following which Co-op's directors passed a resolution providing "that the right-of-way for the transmission line will be cleared of trees and logs to a degree satisfactory to the Forest Service ahead of Contractor's schedule." On August 9, 1949, after three successive bid openings without letting of the contract, the offer of Contractor dated July 22, 1949 was formally accepted by Co-op. Section 3 of the contract provided that the Proposal, Notice and Instructions to Bidders and other material, including the specifications issued to bidders for right-of-way clearing, be incorporated in the contract. Surety issued the performance bond of Contractor required by the contract.

Construction commenced on August 6, 1949 and completion date was fixed at November 9, 1949. Beginning shortly after start of the work, by agreement modifying the written contract provision for monthly progress payments, such payments were made to Contractor at 15-day intervals and continued for periods to and including November 14, 1949. Payment for work performed in the 15-day period following November 14, 1949 was not made although certified for payment by Co-op's engineer.

On October 29, 1949, when only a little more than one-third of the line construction had been completed, Contractor requested a 30-day extension of completion

time claiming that Co-op's delay in delivery of poles and staking sheets and in right-of-way clearance required the extension. By letter Co-op extended completion date to December 9, 1949. On December 2, 1949 Contractor requested an additional 45 days for completion of the contract work, again claiming the same delays by Co-op. The falling of trees across the right-of-way and damage to the power line caused by a windstorm on November 26 and 27, 1949 was assigned as a further reason for the requested extension. On the date of the request Co-op's directors and engineer, Contractor and his superintendent, a representative of Surety and others attended a meeting at Co-op's office. During the meeting Co-op's officials informed Contractor that unless he agreed in writing to repair the storm damage at his own expense he would not be paid for the work which had been performed between November 15, 1949 and December 1, 1949, and his request for further extension of completion time would not be granted. Contractor refused to make the storm repairs at his own expense and demanded the progress payment then due.

On December 12, 1949 Co-op's board of directors formally denied the second extension request and the following day a letter was sent to Contractor asserting he was in contract default for failure to complete the line on time and for his refusal to repair the damage caused by the windstorm. The letter stated that the contract would be terminated unless Contractor either corrected the asserted defaults or submitted a satisfactory program therefor within 10 days. Contractor continued work until December 17, 1949 when he notified Co-op by letter of his refusal to proceed further because he had not been paid for the work performed during the last two weeks of November, and that he expected payment of the reasonable value of work done to date. The storm damage was repaired and the transmission line finally completed in August, 1950 by another contractor.

Co-op's complaint against Surety only, claiming damages for Contractor's alleged failure of contract performance, was filed in the federal district court in December, 1950, diversity jurisdiction under 28 U.S.C. § 1332 being asserted. Surety moved the court for leave to bring in Contractor as a third party defendant under Fed.Rules Civ.Proc. Rule 14, 28 U.S.C. and Contractor moved for leave under F.R.C.P. Rule 24 to intervene and to file a complaint in intervention claiming recovery against Co-op on *quantum meruit* for work performed on the transmission line. The motion of Contractor was granted.

Nonjury trial resulted in entry of findings, conclusions and a judgment dismissing Co-op's complaint and awarding recovery on Contractor's complaint against Co-op in the sum of $17,209.92, with costs. In substance, the district court found and held that the delay in Contractor's performance of the contract work was due to the failure and neglect of Co-op in breach of the contract to clear the right-of-way in a timely and proper manner.

On appeal Co-op contends: (1) that the district court was without jurisdiction to hear and determine Contractor's claim against Co-op because of nondiversity of citizenship between them; and (2) that the district court erred in finding Co-op responsible for Contractor's delay in performance and in failing to apply contract provisions concerning the effect of delay.

Co-op had the right to sue Surety on the performance bond without joining Contractor as a party defendant, the obligations of the bond being joint and several. The federal district court had jurisdiction of the action under 28 U.S.C. § 1332 by reason of the amount in controversy and the diversity of citizenship of the parties. Contractor was not a necessary or indispensable party to the action as originally commenced; accordingly his subsequent appearance in the cause by intervention did not divest federal jurisdiction thereto-

fore established and properly invoked by Co-op. "Jurisdiction once acquired on that (diversity) ground is not divested by a subsequent change in the citizenship of the parties." Wichita R. & Light Co. v. Public Utilities Commission, 260 U.S. 48, 54, 43 S.Ct. 51, 53, 67 L.Ed. 124. Jurisdiction on diversity grounds existing at the commencement of an action is not divested by a subsequent reduction of the amount in controversy below the jurisdictional minimum. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845. If the voluntary action of the original parties in eliminating as between themselves either diversity of citizenship or jurisdictional amount in controversy does not destroy diversity jurisdiction previously established, certainly established jurisdiction will not be divested by the intervention of a dispensable party of the same citizenship as the original plaintiff, if such intervention be without collusion and authorized by procedural rules.

In a case almost exactly apposite in facts and procedure to the present case, United States, for Use and for Benefit of Foster Wheeler Corp. v. American Surety Co., 2 Cir., 1944, 142 F.2d 726, 728, the Second Circuit said:

"Atlantic was properly allowed to intervene in the suit. It would have been bound by a judgment against the surety entered after it had received due notice of the suit, and it was entitled to an opportunity to defend that action. Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 329, 330, 16 S.Ct. 564, 40 L.Ed. 712; Kramer v. Morgan, 2 Cir., 85 F.2d 96. The counterclaim it filed against the plaintiff was likewise properly allowed although there was no diversity of citizenship to support jurisdiction. It was based on an alleged breach of the same contract on which the plaintiff sued. Although the intervenor could not have sued the plaintiff in the first instance on that contract in a federal court, yet when the plaintiff sued upon it under the Miller Act and the intervenor became a party to that suit no additional ground of jurisdiction was needed to support the counterclaim. Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370. Of course the propriety of such orders as these would hardly have been questioned had they been made after the Federal Rules of Civil Procedure took effect. Rules 13(a) and 24(a), F.R.C.P., 28 U.S. C.A. following section 723c."

In another closely similar case, Virginia Electric & Power Co. v. Carolina Peanut Co., 4 Cir., 1951, 186 F.2d 816, 821, 32 A.L.R.2d 234 the Fourth Circuit said:

"Permitting intervention after federal jurisdiction has attached by an insurer which is a resident of the same state as defendant will not defeat the jurisdiction. The rule applicable was thus stated by Chief Justice Taft in Wichita R. & Light Co. v. Public Utilities Comm., 260 U.S. 48, 54, 43 S.Ct. 51, 53, 67 L.Ed. 124: 'Jurisdiction once acquired on that ground is not divested by a subsequent change in the citizenship of the parties. Mullen v. Torrance, 9 Wheat. 537, 539, 6 L.Ed. 154; Clarke v. Mathewson, 12 Pet. 164, 171, 9 L.Ed. 1041; Koenigsberger v. Richmond [Silver] Mining Co., 158 U.S. 41, 49, 15 S.Ct. 751, 39 L.Ed. 889; Louisville, New Albany & Chicago R. Co. v. Louisville Trust Co., 174 U.S. 552, 566, 19 S.Ct. 817, 43 L.Ed. 1081. Much less is such jurisdiction defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties.' "

Other cases to the same effect, although dealing with jurisdiction of claims asserted by parties brought in under Rules 13 and 14 are: Lesnik v. Public Industrials Corp., 2 Cir., 1944, 144 F.2d 968; Waylander-Peterson Co. v. Great No. Ry., 8 Cir., 1953, 201 F.2d

408, 37 A.L.R.2d 1399; Williams v. Keyes, 5 Cir., 1942, 125 F.2d 208.

In the Williams case, supra, the Fifth Circuit said, 125 F.2d at page 209:

"* * * The plaintiffs elected to sue the surety company alone. It made no defense on the ground of nonjoinder of parties defendant, and thereby waived the point. The record discloses no collusive attempt by plaintiffs and defendant to establish federal jurisdictional requirements. At the time of removal, the cause stood bona fide as one between resident plaintiffs and a single non-resident defendant. Federal jurisdiction was then shown, and the fact that citizens of Florida were brought in as third-party defendants subsequent to removal did not divest the federal court of jurisdiction. The court properly refused to remand the cause to the state court. * * *

"* * * Outmoded technicalities and refinements of procedure no longer obtain in federal courts; the object of the new rules being to facilitate the trial and disposition of causes and all matters in controversy upon their merits. Here appellants were properly before the court under the provisions of Rule 14(a), 28 U.S.C.A. following section 723c. * * *"

In the present case Contractor was properly before the court under the provisions of Rule 24. The trial court found the elements necessary for intervention by Contractor as a matter of right under subdivision (a) of the Rule, but in any event there was ample basis for permissive intervention under subdivision (b) since Contractor's claim against Co-op had multiple questions of fact and law identical with those of Co-op's claim against Surety. Leave for an intervenor to assert a claim with questions of fact or law common to the main action is expressly contemplated by Rule 24(b) and may be granted independently of Rule 13 pertaining to counterclaims and cross claims.

Co-op cites the following authority for the contention that the district court was without jurisdiction to hear and determine Contractor's claim against Co-op: Federal Prac. & Proc., Barron & Holtzoff, Par. 593, page 204; Kaus v. American Surety Co., D.C., 199 F. 972; Asher v. Bone, 9 Cir., 100 F.2d 315; Johnson v. Riverland Levee Dist., 117 F.2d 711, 714, 134 A.L.R. 326; Humble Oil & R. Co. v. Sun Oil Co., 5 Cir., 190 F.2d 191; American Union Ins. Co. v. Lowman Wine & B. Co., D.C., 94 F.Supp. 774; Hayhurst v. Henry, D.C., 102 F.Supp. 306; McDonald v. Dykes, D.C., 6 F.R.D. 569; Hull v. United States Rubber Co., D.C., 7 F.R.D. 243.

The text statement in Barron & Holtzoff is supported only by two of the district court cases listed. Some of the cited cases were decided prior to adoption of the present Rules and others are distinguishable in fact. Moreover, the cited authority is inconsistent with the principles stated by the Supreme Court in Wichita R. & Light Co. v. Public Utilities Commission, supra and in St. Paul Mercury Indemnity Co. v. Red Cab Co., supra. We consider the reasoning of the several Circuits in the cases previously cited and quoted herein fully applicable to the situation presented in this case. The jurisdiction fully and properly established in the first instance by the service and filing of Co-op's complaint was not divested by the proper intervention of Contractor. With the parties properly before the district court it had jurisdiction to hear and determine all contentions between them which could be raised and asserted under the rules of procedure.

■■ The trial court found that in fact the delay in construction of the power line was due exclusively to the failure and neglect of Co-op to make timely and proper clearance of the right-of-way. The court found that the windstorm damage was due to "the failure of

plaintiff (Co-op) to properly trim or fell danger trees ahead of the intervenor's construction work," and because of Co-op's "faulty and negligent clearing." There was ample evidence to support such findings; certainly they are not clearly erroneous. Contractor's bid was submitted and accepted on the express understanding that Co-op would clear the right-of-way. Even if Co-op's exacting specifications for such clearing and the resolution of Co-op's directors concerning the clearing both be entirely disregarded, the obligation of Co-op to promptly perform reasonably thorough clearing so as not to hinder or delay Contractor would be implied by law.

" 'In every express contract for the erection of a building or for the performance of other constructive work, there is an implied term that the owner, or other person for whom the work is contracted to be done, will not obstruct, hinder, or delay the contractor, but, on the contrary, will in all ways facilitate the performance of the work to be done by him. * * *

" 'In the Mansfield [v. New York Cent. & H. R. R. Co., 102 N.Y. 205, 6 N.E. 386] case the court said that the contract implied—"an understanding by all parties that they were to be unrestricted in the employment of means to perform it, and that nothing which it was the duty of the owner to do to enable the contractor to perform, should be left undone." ' " Haley v. Brady, 17 Wash.2d 775, 137 P.2d 505, 511, 146 A.L.R. 859, 867.

"That an implied, if not express, covenant is contained in this contract, requiring defendant to furnish and deliver the site in a condition to permit the work to be done, and that a failure so to do is a wrongful breach of the contract for which the contractor may recover

damages, is well settled by numerous cases.

\* \* \* \* \* \*

" '\* \* \* Manifestly, when time is made the essence of the contract and the contractor is required to complete it within a fixed period, he acquires an equal right to complete it during that period, and no construction of isolated paragraphs can be indulged in or permitted which shall destroy the essence of the contract and deprive it of its mutuality." Bates & Rogers Const. Co. v. Board of Commissioners, D.C., 274 F. 659, 661.

■ The parties' agreement to the practice of regularly making progress payments at 15-day intervals constituted a modification of the original contract and Co-op could not thereafter unilaterally terminate such practice in order to coerce Contractor into commitments not required of him. Vulcan Iron Works v. Cook, 15 Cal.App. 410, 114 P. 995; Lease v. Corvallis Sand & Gravel Co., 9 Cir., 185 F.2d 570. An unjustified refusal or failure of Co-op to make a progress payment when due entitled Contractor to refuse continued performance.

"The Circuit Court of Appeals very properly held that in a building or construction contract like the one in question, calling for the performing of labor and furnishing of materials covering a long period of time and involving large expenditures, a stipulation for payments on account to be made from time to time during the progress of the work must be deemed so material that a substantial failure to pay would justify the contractor in declining to proceed." Guerini Stone Co. v. P. J. Carlin, 248 U.S. 334, 39 S.Ct. 102, 106, 63 L.Ed. 275.

■ The only substantial question remaining is whether the so-called "no damage" clause of the contract was applicable and if so whether the district court erred in failing to give it effect.

The portions of the clause applicable to this case read:

> "* * * The time for completion shall be extended for the period of any reasonable delay * * * which, * * * is due exclusively to causes beyond the control and without the fault of the Bidder, including * * * acts or omissions of the Owner with respect to matters for which the Owner is solely responsible; * * * provided further that no delay * * * which results from any of the above causes * * * shall result in any liability on the part of the Owner."

Under the findings of fact, the second extension of completion time requested by Contractor on December 2, 1949 was made necessary by delay due to Co-op's failure of performance and breach of the contract. There was no provision of the contract requiring Contractor at his own expense to repair storm damage caused by Co-op's failure to perform the contract and Co-op had no right to make demand therefor. In response to the extension request Co-op's directors required Contractor to make the repairs at his expense as a condition of granting the request and of making a progress payment then due. Thus Co-op itself wrongfully rejected Contractor's request for the relief specified in the very contract provision Co-op now asserts provided the only remedy for Co-op's negligence and breach of the contract. Co-op's unjustified repudiation of the particular contract provision and subsequent wrongful termination of the entire contract made enforcement of the particular provision impossible in fact and inapplicable in law. Among cases to such effect are: Bates & Rogers Construction Co. v. Board of Commissioners, D.C., 274 F. 659; Selden Breck Construction Co. v. Regents of University of Michigan, D.C., 274 F. 982; John T. Brady & Co. v. Board of Education, 222 App.Div. 504, 226 N.Y.S. 707; O'Connor v. Smith, 84 Tex. 232, 19 S.W. 168.

Such holding is in harmony with Oregon law as stated in Hayden v. City of Astoria, 74 Or. 525, 145 P. 1072, 1074, where provisions of a construction contract generally similar to those in question in this case were involved. In that case the Oregon Supreme Court said:

> "It is the rule that in carrying out a contract, whether time is of the essence or not, the owner cannot delay or retard the contractor in the progress of the work or prevent performance thereof without liability; and, where the owner under the contract is bound to furnish materials or to do any other thing required to be done by him pursuant to the contract, he must do that thing in such a way as not to retard the contractor; and, if through the act or omission of the owner under such circumstances the work is delayed in such a way as to make performance impossible, the contractor can recover upon the quantum meruit."

Other Oregon cases to the same effect are:

Feldschau v. Clatsop County, 117 Or. 482, 244 P. 528; McDonald v. Supple, 96 Or. 486, 190 P. 315; Sweeney v. Jackson County, 93 Or. 96, 178 P. 365, 182 P. 380.

On Contractor's appeal error is assigned in the amount of recovery awarded Contractor. Only fact questions were presented in fixing the amount of recovery on *quantum meruit* and examination of the record indicates that the findings of the district court on such issue were not clearly erroneous.

The judgment is affirmed in all respects.