E. DE VOE TOMPKINS, INC., ET AL. vs. THE CITY OF BRIDGEPORT.

Third Judicial District, Bridgeport, October Term, 1923.
WHEELER, C. J., BEACH, CURTIS, KELLOGG and WOLFE, Js.

Representations which are authoritative and misleading need not be alleged to be intentionally false, in a suit for a rescission of the contract on the ground of misrepresentation.

One who would rescind or repudiate a contract for alleged fraud in its inception, must do so within a reasonable time after his discovery of the fraud; he cannot go on and fulfil his entire obligation under the contract and then sue for its rescission.

This principle is applicable to a sewer contractor who, notwithstanding his knowledge of alleged misrepresentations by the city of the number and location of existing sewers likely to be encountered by him in his undertaking, elects to go on and fully perform the contract; under such circumstances, whatever right of rescission he may have had originally has been lost by such election.

The contract in question provided that all sheathing used in the construction of the sewer should be removed, unless the city engineer should require it to be left in place. *Held* that orders of the city engineer, made in the honest exercise of his judgment with respect to this matter, afforded the contractor no ground for the recovery of damages, inasmuch as the parties had mutually agreed upon

this method and the law would not read any other rule into the contract.

The contractor also sought to recover damages arising out of claims of third parties for injuries sustained by them in the prosecution of the work. *Held* that such recovery was not allowable without allegation and proof that the contractor had been compelled to pay such damages, and unless it further appeared that the same had been adjudicated in actions between the plaintiffs and the claimants as having arisen without negligence upon the part of the contractor—since such adjudication could not be made in the present case so as to bind third parties.

One section (98) of the sewer contract stipulated that the city would "provide rights of way for all work specified in the contract"; another (25), that the contractor should "arrange with the manager or agent of any public service corporation which the sewer trench may cross or interfere with as to the manner of protecting the corporation during the work of constructing the sewer"; and section five provided that the price bid should cover the care of existing service pipes and structures of all kinds affected by the work. *Held* that sections five and twenty-five placed upon the contractor this primary duty of arranging or attempting to arrange for the removal of pipes and other structures belonging to public service corporations; and that section ninety-eight referred primarily, if not exclusively, to "rights of way" in the usual and accepted legal significance of that phrase, although it might possibly obligate the city to exert its authority to remove such pipes and structures if the contractor was unable to conclude satisfactory arrangements with the public service corporations.

An implied promise arises out of the execution of every contract calling for construction work, that the promisee will do nothing to prevent or impede the due performance of the work by the promisor; but this rule has no application where it appears that the promisee has done nothing except that which it was mutually agreed in advance he might do.

Argued November 1st—decided December 13th, 1923.

SUIT to set aside a sewer-construction contract made by the plaintiff Tompkins, Inc., with the defendant, and for damages, brought to the Superior Court in Fairfield County where a demurrer to the complaint and its prayer for equitable relief was sustained (*Keeler, J.*), and later one to the first count of the complaint as amended was likewise sustained (*Banks, J.*) and, upon a trial to the court upon the second count of the amended

complaint, judgment was rendered (*Maltbie, J.*) for the plaintiffs Leary and Company for $76,858, from which the plaintiffs appealed for alleged error in sustaining the demurrer to the first count of the complaint. *No error.*

*Carl Foster* and *Sanford Stoddard,* for the appellants (plaintiffs).

*William H. Comley,* for the appellee (defendant).

BEACH, J.  The pleadings and exhibits annexed thereto set forth the several causes of action and the grounds of demurrer to each cause of action in such elaborate detail, that any preliminary recital of their contents would involve repetition.  We therefore outline the situation, and then take up separately each cause of action stated and (so far as is necessary) the grounds of demurrer thereto, following the order in which they are discussed in the plaintiffs' brief.

On September 19th, 1916, the plaintiff Tompkins, Inc., entered into a contract, Exhibit A, with the City of Bridgeport for the construction of a large interceptor sewer running through Railroad Avenue and Bostwick Avenue for a distance of about fifty-six hundred feet. Tompkins, Inc., began work under the contract about September 20th, 1916, and continued the work until November 1st, 1917, when the contract was assigned, with the consent of the City, to the plaintiffs Leary and Company, who fully completed the work to the acceptance of the City on December 1st, 1919, after some extensions of time had been granted.  Before this suit was brought the plaintiffs had been paid $435,688.59 on account.

The original complaint was in one count stating several causes of action arising out of the execution and performance of the contract, and claiming (1) by

way of equitable relief that the contract be set aside; (2) such other relief as to equity may appertain; (3) $600,000 damages. Demurrers for misjoinder of parties plaintiff, and to each of the several causes of action stated, and to the prayer for equitable relief, were sustained by the Superior Court. Plaintiffs then amended the original complaint in several matters of detail, and added a second count claiming that there was still due and owing to the plaintiffs under the contract a balance of $76,858.61. The defendant again demurred, on the grounds above stated, to the first count of the amended complaint, and answered the second count by denying that any balance of the contract price remained unpaid. The demurrers for misjoinder of parties, and to the several causes of action stated in the first count, and to the prayer for equitable relief, were again sustained by the Superior Court, and final judgment was rendered dismissing the first count of the complaint; and on the second count that the plaintiffs Leary and Company recover the balance claimed.

Plaintiffs appeal from the ruling of the court sustaining the demurrers to the first count.

The issues of law arising on the appeal are stated as follows in the plaintiffs' brief:—

## A.

The defendant in submitting to bidders the blueprint Exhibit "A" misrepresented the facts to the bidders and misled the plaintiffs so that the plaintiffs believed that on said blueprint were represented all of the sewers and service pipes and other structures existing beneath the earth's surface, and that said sewers were properly located on said blueprint and that said service pipes were located on said blueprint according to information furnished to the defendant by the respective corporations; and that when such

representations were made to the plaintiffs by the defendant, the defendant knew, or ought to have known, that such representations were untrue. The plaintiffs had no knowledge of these structures, nor the means of obtaining it other than from representations made to it by the defendant. The defendant was thereby guilty of fraud in misleading the plaintiffs into entering into said contract and, therefore, said contract should be rescinded and the plaintiff should recover *quantum meruit* on the work.

### B.

If the plaintiffs are in error in their claim for the rescission of the contract, they are entitled to recover such damages as the defendant caused them by its failure to use good engineering practice in the failure of its engineer to issue instructions relative to the sheathing before the work began.

### C.

The plaintiffs have a right of action to recover for breach of the implied contract that the defendant, as principal, shall indemnify the plaintiffs as its agents against damages and costs, recovered from them by strangers by reason of the carrying out of the work of the contract according to its terms, together with the expenses incidental thereto.

### D.

The plaintiffs have a right of action to recover from the defendant damages for the breach of the express contract that the defendant should provide the plaintiffs with a right of way to use the highway for work under said contract.

### E.

The question raised upon the demurrer for a misjoinder of parties.

### F.

The question of an independent cause of action from the bursting and leaking of certain sewers.

We take up these issues in the order above stated.

### A.

The allegations of the complaint as to the cause of action based on misrepresentation, and in support of the prayer that the contract be set aside and the plaintiffs be allowed to recover for the entire work on the basis of *quantum meruit*, are summed up in the plaintiffs' brief substantially as follows:—

Before the contract was executed the defendant furnished to the plaintiffs a blueprint, Exhibit A, for their information in making their bid on the work. The blueprint purported to indicate the existence of all sewers, pipes and other structures under the earth's surface which might affect the carrying out of the work, and the location and extent and condition of certain sewers. Twenty sewers, pipes and other structures not shown on the blueprint, existed under the earth's surface which affected the carrying out of the work. Six large sewers were inaccurately indicated on the blueprint as to location, extent and/or condition. The plaintiffs were put to great loss and expense by reason of the omissions and errors in the blueprint. The defendant knew or should have known when the contract was made that the sewers, etc., not shown on the blueprint, existed, that the sewers were inaccurately indicated, and that the sewers were in such bad condition that they burst in the diligent prosecution of the work. The plaintiffs did not know, when the contract was made, that the sewers, etc., not shown on the blueprint existed, that the sewers were inaccurately indicated, or that the sewers were in the con-

dition described. The plaintiffs were misled to their damage by the failure of the blueprint to indicate the existence of the sewers, etc., listed, by the inaccuracies of the blueprint, and by the failure of the defendant to notify the plaintiffs of the conditions described. Before making the contract the plaintiffs could not by reasonable diligence have discovered the existence of the sewers, etc., not shown on the blueprint, or the location or condition of the sewers, etc., described. Under the conditions above referred to plaintiffs claim that the failure of the defendant to notify the plaintiffs of the existence of the sewers, etc., not shown on the blueprint, of the inaccuracies of the blueprint and of the condition of the sewers, etc., described, constituted in law a fraud on the plaintiffs.

The above is a fair condensation of the allegations of the complaint material to this cause of action; but inspection of the blueprint shows that the allegations as to the authoritative character of the representations conveyed by it are too broadly stated. The Exhibit bears on its face this legend: "RAILROAD AVENUE. Showing present and proposed sewers. Scale 1 in.– 200 ft. NOTICE TO CONTRACTORS. All public service pipes shown on these plans are located from information furnished by the respective corporations. The City of Bridgeport assumes no responsibility for errors in location as shown." The scale above indicated applies to a plan of Railroad and Bostwick Avenues showing twenty-seven intersecting or connecting streets, and to a longitudinal section showing gradients. The Exhibit also contains twenty-one cross sections at designated stations showing "relation of proposed interceptor to service pipes, retaining walls," etc., on a scale of 1 in.–10 ft. It also shows in plan fourteen street intersections on a scale of 1 in.–40 ft.

The Exhibit may fairly be taken to be an authori-

tative representation by the defendant city as to the existence and location of its own public sewers. It does not, however, purport to be an authoritative representation as to the existence, or nonexistence, or location, of any other underground structures which might affect the progress of the work. As to such structures the contractors were informed by the Exhibit that the city assumed no responsibility for errors in location. Nor does the Exhibit contain any representation as to the condition of any of the structures shown, except that a few of the public sewers indicated are marked "dead." It is alleged that one of the sewers marked "dead" had flow in it. The net result is that it appears from the complaint that the Exhibit—so far as it purported to be authoritative—was in the main correct, but was misleading in that some public sewers encountered in the progress of the work were not shown, and in that one sewer marked "dead" had flow in it.

It is not alleged that these mispresentations were intentionally made, but being authoritative and misleading, it is not necessary to allege that they were intentionally false. *Water Commissioners* v. *Robbins,* 82 Conn. 623, 644, 74 Atl. 938; *Scholfield Gear & Pulley Co.* v. *Scholfield,* 71 Conn. 1, 19, 40 Atl. 1046. For the delay and extra expense of dealing with such sewers, the plaintiffs might have recovered under the contract notwithstanding its general provision that "the price bid shall also cover the care of existing service pipes and structures of all kinds affected by the work whether shown on the plans or not." *United States* v. *Utah, N. & C. Stage Co.,* 199 U. S. 414, 26 Sup. Ct. 69; *Hollerbach* v. *United States,* 233 U. S. 165, 34 Sup. Ct. 553; *Christie* v. *United States,* 237 U. S. 234, 35 Sup. Ct. 565. On the whole complaint it appears that the authoritative misrepresentations alleged

did not go to the root of the contract, but only to the amount of work, of the kind contemplated by the contract, which the plaintiffs would be required to do; and that for such additional work the plaintiffs had a right to recover extra compensation under the contract.

We need not, however, pursue the question whether the plaintiffs ever had any right to rescind the contract, or to have it set aside, because of the misrepresentations alleged; for the law is so that, if the plaintiffs ever had such a right, or such a remedy, they have lost it by electing to perform and by fully performing their contract after full knowledge of the truth. The law on that point is well settled in this State. In *Water Commissioners* v. *Robbins*, 82 Conn. 623, 74 Atl. 938, which was a case involving a contract for the construction of a dam and reservoir, we said, at pages 642, 643: " The court did not so charge, but told the jury that one who was led into a contract by fraud was privileged to repudiate the contract if, and only if, he proceeded to do so promptly upon his discovery of it, or within a reasonable time thereafter; but that he might pursue another course, to wit, continue in the execution of the contract, and seek his redress in an action to recover damages for the fraud. This statement of the law, as applicable to contracts partly executed at the time of the discovery of the fraud, is a familiar one, and has had the approval of this court." Citing 2 Cooley on Torts (3d Ed.) 962; *Yale Gas Stove Co.* v. *Wilcox*, 64 Conn. 101, 127, 29 Atl. 303; *Wilson* v. *Nichols*, 72 Conn. 173, 180, 43 Atl. 1052. See, also, Black on Rescission & Cancellation, Vol. 2, § 536, and the many cases cited.

This complaint alleges that the plaintiffs did not and could not know of the existence of the omitted public sewers at the time of the execution of the con-

tract. It does not say when for the first time the plaintiffs discovered that they had been injuriously misled by the blueprint. It does allege that the plaintiffs continued the work for more than three years and until it was fully performed; and it affirmatively appears from the allegation that the plaintiffs were delayed and put to expense in dealing with the omitted sewers that they did know the whole truth and all of its consequences, at some time before the completion of the work. Nevertheless they proceeded to fully perform, and in this action have recovered the entire balance alleged to be due under the contract, in a cause of action which necessarily asserts that the contract is valid and enforceable. This, again, was an affirmation of the contract and an election between two inconsistent courses of conduct. *Bulkley* v. *Morgan*, 46 Conn. 393; *Disbrow* v. *Secor*, 58 Conn. 35, 18 Atl. 981; *Soper Lumber Co.* v. *Halstead & Harmount Co.*, 73 Conn. 547, 553, 48 Atl. 425; Black on Rescission & Cancellation, Vol. 2, § 612.

The demurrer to this cause of action claiming the right to rescind the contract and to have it set aside was rightly sustained.

### B.

This cause of action is based on the assumed existence of an implied contract by the defendant to conform to good engineering practice, and upon the allegations of the complaint to the effect that good engineering practice required all of the sheathing to be left in place throughout the work, and that such practice required the engineer to notify the plaintiffs before the work was begun whether the sheathing was to be removed.

The material provisions of the contract are these:—

"64. The contractor shall furnish and put in place and maintain such sheathing, bracing, etc., as may be required to support thoroughly the side of the excava-

tion (whether above or below sewer grade) and to prevent any movement which might injure the sewers, diminish the width necessary for proper drainage or otherwise injure or delay the work or interfere seriously with adjoining structures or operations."

"86. That portion of the sheathing in the trench extending below the top of the sewers shall be withdrawn, unless otherwise directed by the engineer, before more than six inches of earth is placed above the top of the sewer. As the trench is refilled, the sheathing and timbering shall be removed in such a manner as to avoid the caving in of the trench. The vacancy left by the sheathing shall be carefully refilled by ramming, or otherwise as directed."

"87. When the engineer decides that the sheathing or shoring cannot be removed without injury to the sewer or to adjoining structures, or for other causes, the sheathing shall be cut where designated by the engineer and the upper part removed. The contractor shall be paid for the lumber left in place at a price agreed upon in writing per 1,000 B. M. Item 21 proposal."

It is alleged that the engineer at first, and while the Bostwick Avenue section of the work was under construction, failed to give any directions as to the sheathing, so that the plaintiffs removed it as required by § 86. Afterward, and as to most of the work on Railroad Avenue, the engineer required that the sheathing be left in place. Damages are claimed because the plaintiffs were at first led to believe that no sheathing would be required to be left in place, and having bought only enough to complete the work on that basis, were unexpectedly required, by the defendant's change of policy, to buy additional sheathing in an advancing market. Also because the engineer's failure to give any directions as to sheathing, and its consequent

withdrawal by the plaintiffs, injured the work, and gave rise to claims that adjoining structures were injured, for some of which claimed injuries suits have been brought against the plaintiffs, in respect of which the plaintiffs have been and will be put to expense.

The main grounds of demurrer to this cause of action, and the only grounds which go to the whole cause of action, are that §§ 86 and 87 of the contract reserve to the defendant and its engineer the right to decide whether the sheathing should be removed or left in place, and that it does not appear that in making his decisions the engineer acted otherwise than in the honest exercise of his judgment. These demurrers to this cause of action were rightly sustained.

The parties expressly agreed on a rule for determining whether the sheathing should be removed or left in place, which rule covered the whole subject-matter. The sheathing was to be removed unless the engineer otherwise decided for cause, and then it was to be left in place. That being the express agreement of the parties, the law will not sweep it aside and substitute an implied agreement to follow a different rule which would, in effect, substitute the judgment of a trier for the judgment of the engineer. The engineer must follow his honest judgment; and there is no allegation that he has not done so.

There is, of course, an implied undertaking arising out of the execution of every contract of this kind, that the promisee will do nothing to prevent or impede the due performance of the work by the promisor; and this rule is stated and applied in the cases cited on the plaintiffs' brief. But the principle thus invoked has no application here; because it appears from the complaint that the defendant's engineer has done nothing except that which the plaintiffs agreed in advance that he might do.

## C.

This right of action is presented on the brief in two forms: first, under heading B, as a claim for damages for breach of the non-existent implied contract to deal with the sheathing according to the general principles of good engineering; and second, under heading C, as a claim for damages for breach of an implied contract that the defendant as principal will indemnify the plaintiffs as its agents against damages and costs recovered from them by reason of the carrying out of the work according to the terms of the contract, and without fault on the part of the plaintiffs.

The damages and costs referred to are alleged to have arisen out of claims and suits brought against the plaintiffs for injuries to the property of third parties.

This cause of action is demurred to because it is not alleged that the plaintiffs have been compelled to pay any such claims or damages, and the demurrer on this ground was properly sustained, because it is obvious that the plaintiffs cannot be compelled to pay them unless upon allegation and proof that the injuries in question were wholly or partly caused by the plaintiffs' own fault. It is also apparent, upon general principles, that the plaintiffs are bound to defend themselves at their own cost against claims and suits founded on their own alleged negligence. After successfully defending against such an action, they may possibly be entitled to recover from the defendant the reasonable cost of defending it, on the ground of having been wrongfully subjected to the action by some fault on the part of the defendant. But they must first clear their own skirts, and that cannot be done in this action so as to bind third parties.

## D.

Whether a cause of action based on the alleged neglect of the defendant city to furnish rights of way is

sufficiently alleged, depends on the construction to be put on § 98 of the contract read in the light of §§ 5 and 25. Section 98 reads thus: "The city will provide rights of way for all work specified in this contract." The complaint alleges, in substance, that in the streets where work was to be done there were various pipes and other structures belonging to public service corporations which obstructed the progress of the work; that the defendant failed in many instances to have such pipes and other structures removed, and in other instances was dilatory in having them removed, thereby greatly delaying the performance of the work; and that the plaintiffs were greatly damaged by reason of such delay, in the matter of continued overhead expense, and by reason of the rising cost of materials and labor. It is not alleged that the city failed to provide for the contractors the right to occupy or to have access to or over private property. No part of the work extended beyond the limits of Bostwick Avenue and Railroad Avenue, and as to these highways the right of way, in that sense, was complete. The question is whether the covenant of the city to furnish rights of way obligated it to remove public service pipes and other structures which were lawfully within the area of construction and so located as to obstruct the progress of the work. Other relevant sections of the contract are that part of § 5 which provides that "the price bid shall also cover care of existing service pipes and structures of all kinds affected by the work, whether shown on the plans or not, and care of any water or sewage from whatever source which might affect the work or its progress"; also § 25, providing that "the contractor shall arrange with the manager or agent of any public service corporation which the sewer trench may cross or interfere with as to the manner of protecting the corporation during the work, and of

constructing the sewer (subject to the approval of the engineer in writing before such work is begun). The contractor shall pay all expenses connected with such crossing or interference."

These clauses of the contract put upon the contracting plaintiffs the duty of taking care of all service pipes and other structures affected by the work, and also require them to arrange, or at least to attempt to arrange, with public service corporations as to the care and disposition of service pipes and other underground structures standing in the way of the construction of the new sewer. If the work was delayed because contractors were unable in any instance to make a satisfactory arrangement, the city would be bound, after notice, to exert such authority as it might have; possibly under its covenant to furnish rights of way, but more probably under its broader obligation not to prevent or impede the due progress of the work. The complaint does not, however, allege that the plaintiffs first attempted to arrange for the removal of the pipes, etc., in question, or that the city, after notice of the failure of such attempts, neglected to act promptly. It assumes that the duty of arranging for the removal of such structures rested primarily on the city, and the plaintiffs' claim as to this cause of action is so stated on the brief. This assumption and claim is literally contradicted by § 25.

Reading the above quoted sections together, we are of opinion that § 98 refers primarily, if not exclusively, to rights of way in the usual and accepted legal significance of that phrase. Such rights of way the city was bound to furnish on its own initiative. Sections 5 and 25 put the initiative in removing pipes and other underground obstacles to the physical construction of the new sewer, upon the contractors; and if § 98 refers at all to the removal of such obstacles, the city was not

bound to remove them until after the contractors had attempted to do so without success.

Referring to the two citations relied on in the plaintiffs' brief, *Pitt Const. Co.* v. *Dayton,* 151 C. C. A. 11, 237 Fed. 305, was a case arising under a covenant identical in language with § 98, and in that case the municipality failed seasonably to provide a right of way for the construction of a sewer through a section of the lay-out to which a third party asserted title; *Mairs* v. *Mayor, etc., of New York,* 30 Misc. 384, 62 N. Y. Supp. 351, which affords some support to the plaintiffs' claim, was reversed by the Appellate Division, 52 App. Div. 343, 65 N. Y. Supp. 160, and the order of reversal was affirmed by the Court of Appeals, 166 N. Y. 618, 59 N. E. 1126.

### E.

Since we reach the conclusion that the first count of the complaint does not state any valid cause of action, it is unnecessary to discuss the merits of the demurrer for misjoinder of parties.

### F.

As to this cause of action, which the demurrer assumes is a separate and distinct cause of action, the plaintiffs' brief says: "No such independent cause of action is claimed; the claim as to these facts is that the defendant knew or ought to have known of the bad condition of the sewers, and did not notify the plaintiffs thereof, and that its non-disclosure of these very material conditions was one of the elements of misrepresentation and fraud, justifying the rescission of the contract." As to this cause of action, we have already held that no authoritative representations as to the condition of the sewers in service is sufficiently alleged; and that whatever right of rescission the plaintiffs may have had, has been lost by their election to

fully complete the contract after full knowledge of the facts.

There is no error.

In this opinion the other judges concurred.