E. AND F. CONSTRUCTION COMPANY *vs.* TOWN OF STAMFORD.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 6th, 1931—decided February 9th, 1932.

*William H. Comley*, with whom was *Theodore Steiber*, for the appellant (plaintiff).

*Thomas J. Ryle*, with whom was *Jackson Palmer*, for the appellee (defendant).

BANKS, J. The committee found the, following facts: In the fall of 1926 the defendant, acting through its High School Building Committee, invited contractors to bid upon the construction of a new high school. The plaintiff procured from the architects a set of plans, specifications and instructions to bidders, the specifications containing a provision that the contrac-

tor should remove all rock encountered, except boulders, at an additional price per cubic yard provided for in the bid form. The plaintiff submitted its offer to build the school for $838,998, plus a unit price of $4.50 per cubic yard for rock encountered in the excavation of the site, which however was not the lowest bid submitted. Thereafter negotiations were commenced between the plaintiff on the one hand and the architects and certain members of the building committee on the other hand for a revision of the plaintiff's bid, and it was proposed that the plaintiff, as a concession for the award of the contract to it, include the cost of rock excavation in its lump sum bid. The plaintiff thereupon notified the building committee that if it was awarded the general contract it would (1) agree to have the building ready for occupancy on or before August 15th, 1928, (2) accept a clause in the contract providing for the payment of damages to the town for each day of delay after September 1st, 1928, and (3) make all necessary rock excavation without additional cost. The building committee awarded the contract to the plaintiff, and a contract was executed in which the plaintiff agreed to erect the building as called for by the plans and specifications for the lump sum of $838,998 which sum should include all necessary rock excavation incident to the full performance of the contract. Among the completed drawings of plans submitted the bidders was one known as Sheet ♯ 6, which showed the outline of the building and the location of thirty-eight borings, together with contour lines and elevations, the borings being distributed over the entire area of the site. This sheet contained the following notation: "Within the area shown by dotted line there is rock at 93 and 94. Over the entire plot where the building is located there is loam and gravel, sand and gravel and boulders"; and

beneath this a heading: "SOIL AND SOUNDINGS AT
POINTS SHOWN," following which was a record of the
subsurface conditions reported at depths ranging from
one foot six inches to fourteen feet, which record dis-
closed a subsurface structure of loam, hardpan, sand,
clay, gravel and boulders, but showed no rock except
in the area within the dotted lines. This area contained
approximately one hundred and fifty cubic yards of
rock to be excavated. The plaintiff began excavation
and encountered a solid ledge of rock not shown on the
plans, which in some places came up within a few
inches of the surface. It complained of the rock con-
ditions but, the architect agreeing to present its claim
for extra compensation to the defendant at the proper
time, it proceeded with the work and completed its
contract within the time limit. In order to make the
required excavation, the plaintiff was obliged to ex-
cavate six thousand one hundred and ninety-eight
cubic yards of rock over and above the amount shown
in the rock area within the dotted lines on Sheet ♯ 6, at
a reasonable cost of removal of $4.50 per cubic yard.
The committee found that the boring data contained
on Sheet ♯ 6 were prepared and submitted to the plain-
tiff and other bidders for the purpose of informing
them as to subsurface conditions, that it was a proper
and reasonable inference to be drawn by the plaintiff
that no rock would be encountered in the excavation
outside the area of the dotted line circle and to the
depth of the borings, and that it was justified in as-
suming that the total amount to be encountered to
the bottom of the borings would be about one hun-
dred and fifty yards. The committee further found
that, in making its contract, the plaintiff relied upon
the information as to subsurface conditions given on
Sheet ♯ 6, and that this information was false and mis-
leading in that it disclosed no rock except within the

small area of the dotted line circle. In some portions of the building the borings did not go fully to the depth of the required foundations and the amount of rock excavated by the plaintiff below those levels at those points was five hundred and thirty-five cubic yards which was included in the sixty-one hundred and ninety-eight cubic yards excavated. The committee found that the plaintiff by waiving the unit price for rock excavation assumed the risk of finding rock between the depth of the borings and the depth of the foundation, but that it was entitled to recover the expense of excavating fifty-six hundred and sixty-three cubic yards of rock, at $4.50 per cubic yard, with interest from the date of the complaint, and recommended that judgment be entered for such amount. The court accepted the report of the committee on the facts but not its legal conclusions or recommendations, and entered judgment for the defendant.

The sole question upon this appeal is that of the correctness of the trial court's conclusion that, upon the facts found by the committee, the plaintiff was not entitled to recover. The committee found that the plaintiff, in entering into the contract by the terms of which it agreed to make all necessary rock excavation, relied on information as to subsurface conditions specifically set forth upon the plot plan sheet # 6, that the plaintiff was justified in assuming that this information was true, and that in fact it was false and misleading. The trial court reached the conclusion that the plaintiff's offer to make all the rock excavation without extra cost if it were awarded the general contract constituted, when accepted by the defendant, a separate agreement —a "contract to obtain the building contract"—that this contract was not affected by any representations of the defendant as to the character of the subsurface of the building site, and that the plaintiff, having

agreed to make all necessary rock excavation in consideration of the award to it of the general contract, had no right to rely upon the assumption that no rock would be encountered other than as indicated upon the Sheet ♯ 6. The plaintiff contends that the facts stated in the committee's report do not support these conclusions of the court.

The original specifications upon which the plaintiff and other contractors were asked to submit bids called for a unit price on rock excavation. No contract was awarded upon that basis, and the plaintiff submitted a modified offer in which it agreed to include the cost of rock excavation in its lump sum bid, which offer was accepted by the defendant, and a contract executed incorporating such agreement. The plaintiff's original bid and its modified offer were negotiations leading up to the execution of the building contract and were merged in that contract. That contract by its terms obligated the plaintiff to excavate all the rock encountered without extra charge, and it was excavated in fulfillment of the terms of the contract, and not under those of the preliminary agreement to make such a contract. If it be true that, as the trial court said in its memorandum of decision, the plaintiff, to obtain the contract, was required to agree to make all necessary rock excavations, the same would have been true if the original specifications had called for bids upon the basis of including in the total amount of the bid the cost of all such excavation. Indeed, it is difficult to discover any difference between the legal situation presented upon the facts found by the committee and that which would have been present if the original bid had called for a lump sum to include rock excavation. If the distinction drawn by the trial court between the building contract and the preliminary agreement to enter into such a contract were to be con-

sidered material, it would still be difficult to sustain the trial court's conclusion that this preliminary agreement was not affected by the representations as to the character of the subsoil contained upon Sheet ♯ 6. This information was just as vital to the proposal as it was to the final contract. The plot plan Sheet ♯ 6, together with the rest of the plans and specifications, was furnished to the plaintiff as the basis upon which it was to make its bid. Under the original specifications calling for a unit price for rock excavation, the character of the subsurface of the site was not of paramount importance to the contractor save as it might affect the time within which the contract could be completed. When the plaintiff proposed to include the entire rock excavation in its lump sum bid, the character of the subsurface became of great importance. The plaintiff had in its possession the Sheet ♯ 6 upon which appeared specific information upon this point, upon which the plaintiff was entitled to rely in any modification of its bid. The committee has found that it was a proper and reasonable inference to be drawn by the contractors that no rock would be encountered in the excavation outside the area of the dotted line circle and to the depth of the borings, and upon the findings of the committee the court was not justified in concluding that the plaintiff, in making its modified offer, did not rely upon the representations contained upon Sheet ♯ 6.

The defendant contends that, even though the ground upon which the trial court reversed the conclusion of the committee could not be justified, yet the judgment of the court was correct. The plaintiff's cause of action is based upon the alleged misrepresentation of the character of the subsurface of the building site contained upon Sheet ♯ 6, upon which it relied in contracting to remove all the rock encoun-

tered for a lump sum. The defendant contends that Sheet ♯ 6, which was issued in connection with specifications calling for a unit price per cubic yard for rock excavation, when interpreted in connection with these specifications and the other plans, was not a representation of subsoil conditions except at the boring stations thereon noted and within the dotted circle. The committee found otherwise, and the specific notation upon this sheet as to the character of the subsoil precludes any other interpretation of it than that reached by the committee.

The defendant also claims that it cannot be held liable in this action, which it assumes to be one based upon fraudulent representations and deceit, in the absence of proof of its actual knowledge of the falsity of the representations as to the nature of the subsoil. It relies upon the rule that a fraudulent representation is one that is either knowingly untrue, or made without belief in its truth, or recklessly made for the purpose of inducing action upon it, and that in an action in deceit, when the *gravamen* of the action is bad faith, recovery is dependent upon proof that the representations relied upon were made in one of the three ways mentioned. *Sallies* v. *Johnson,* 85 Conn. 77, 82, 81 Atl. 974; *Dwyer* v. *Redmond,* 103 Conn. 237, 244, 130 Atl. 108. Here there is no allegation of fraud, and no suggestion that the members of the defendant's building committee or any of them acted in bad faith. The complaint alleges that the representations of the quantity of rock to be excavated were grossly inaccurate and misleading, and that, in consequence thereof, the plaintiff was compelled to expend a large sum of money in excavating rock in excess of the amount shown upon the drawings. The finding of the committee that the plaintiff relied on this information in making its contract, and that it was false and mis-

leading, to its damage as shown in the committee's report, entitled the plaintiff to redress. The plaintiff was not required to label its action either as one *ex contractu* or as sounding in tort. A plaintiff may state in his complaint all the facts material to support his claim and demand redress for all wrongs that can legally be inferred from such facts whether they arise in contract or in tort. *Dunnett* v. *Thronton,* 73 Conn. 1, 5, 46 Atl. 158. If the misrepresentations went to the root of the contract, the plaintiff had a right to rescind it, because it was induced by a material misrepresentation, and to bring an action for damages based on the rescission. *Henry* v. *Kopf,* 104 Conn. 73, 75, 131 Atl. 412; 3 Williston on Contracts, § 1500. But this was not its only remedy. It could continue in the execution of the contract and seek redress in an action to recover the damages resulting from the defendant's misrepresentation. This it elected to do upon the architect's agreement to present its claim for compensation to the defendant at the proper time. The plaintiff is entitled to redress in this action for its loss, due to the defendant's misrepresentation, equally with its right if it had elected to rescind the contract, and for the same reason, that it would be unjust for a party to a contract who had made misrepresentations, even innocently, which concerned the subject-matter of the contract and induced the other party to enter into it, to retain the fruits of a bargain induced by such misrepresentations.

The statement in the specifications as to the nature of the subsoil was in the nature of a warranty and the plaintiff can recover under the contract as for a breach of warranty, in analogy to the right of a vendee to elect to retain goods which are not as warranted, and to recover damages for the breach of warranty. *Hollerbach* v. *United States,* 233 U. S. 165, 34 Sup. Ct.

553; *Christie* v. *United States,* 237 U. S. 234, 35 Sup. Ct. 565; *United States* v. *Smith,* 256 U. S. 11, 41 Sup. Ct. 413; *United States* v. *Atlantic Dredging Co.,* 253 U. S. 1, 40 Sup. Ct. 423; 3 Williston on Contracts, § 1511. These were actions against the government for damages incurred because the character of the material found in making excavations was different from that described in the specifications referred to in the contract. It was there held that statements in such specifications as to the nature of the material to be excavated, though made honestly and without intent to deceive, must be taken as true and binding on the government, and that loss resulting from a mistaken representation of an essential condition should fall on it rather than on the contractor.

In *Tompkins, Inc.* v. *Bridgeport,* 100 Conn. 147, 154, 123 Atl. 135, we expressed approval of the doctrine of these cases and asserted the right of the plaintiff, upon a similar state of facts, to recover extra compensation under its contract, though in that action the plaintiff sought to have the contract set aside, which remedy was denied because the plaintiff had elected to perform.

The underlying principle upon which a party to a contract who has made innocent representations concerning its subject-matter is held responsible for the results following upon them has been stated by Professor Williston as follows: "If a man makes a statement in regard to a matter upon which his hearer may reasonably suppose he has the means of information, . . . and the statement is made as part of a business transaction, or to induce action from which the speaker expects to gain an advantage, he should be held liable for the consequences of reliance upon his misstatement." 3 Williston on Contracts, p. 2689, § 1512. See also Williston, Liability for Honest Misrepresentation, 24 Harvard Law Review, 415. In our view, such

misrepresentations do not amount to fraud, but give rise to a cause of action in the nature of a breach of warranty. Bohlen, Deceit, Negligence, or Warranty, 42 Harvard Law Review, 733, 746; see also Carpenter, Responsibility for Intentional, Negligent and Innocent Misrepresentation, 9 Oregon Law Review, 413, 436. The adoption of this distinction avoids the difficulty inherent in the effort some courts have made to bring innocent representations within the field of fraud. See *Aldrich* v. *Scribner,* 154 Mich. 23, 28, 117 N. W. 581; Morris, Liability for Innocent Misrepresentation, 64 U. S. Law Review, 121, 129. The report of the committee makes it clear that the purpose of these representations was to supply information to bidders upon the job who were expected to act upon it, and entitled to act upon it, in making their bids. They purported to be based upon actual investigation of the subsurface conditions by competent engineers, were adopted by the defendant as its own, and carried with them the assertion of superior knowledge and information. They were authoritative and misleading. The plaintiff was entitled to rely upon them and did rely upon them and was induced by them to enter into the contract. The defendant is responsible for the consequences of the plaintiff's reliance upon its misstatements regardless of whether they were made in good faith.

The defendant in its brief discusses the question of its liability in contract, and asserts that, under the contract, the risk of the indefinite amount of rock to be excavated was expressly assumed by the plaintiff, which agreed to remove all that was encountered upon the site, be the amount greater or less. The contract so stipulated, and, in the absence of a representation as to the amount to be encountered upon which the plaintiff was entitled to rely, the due performance of

its contract would have required it to excavate all rock encountered, though the amount exceeded that anticipated by either party at the time of the execution of the contract. But the plaintiff is seeking recovery of the extra expense involved in rock excavation, which it was obliged under its contract to undertake, because of its reliance upon the false representations of the defendant. If it had had independent knowledge of the conditions, or, regardless of any representations of the defendant, had waived the question of quantity, it could not claim to have been misled. The finding of the committee discloses a false representation by the defendant relied on by the plaintiff in its execution of the contract and entitling it to recover its resulting damages.

The plaintiff remonstrated against the acceptance of the report of the committee because it did not award the plaintiff the cost of excavating the five hundred and thirty-five cubic yards of rock found between the bottom of the borings and that of the foundations, and because the committee awarded interest from the date of the complaint instead of the date of the completion of the building. The court overruled this remonstrance but the plaintiff did not assign this action as error, and these questions are not before us.

There is error, the judgment is set aside, and the cause remanded to the Superior Court with direction to enter judgment in favor of the plaintiff in accordance with the report of the committee.

In this opinion the other judges concurred.