[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case the defendant, Stamford Housing Authority ("HACS") sought the installation of a security window grille work system at buildings in Southfield Village in Stamford, a complex managed by HACS. The project was to be funded by the United States Department of Housing and Urban Development ("HUD") and performed by a HUD-approved contractor. Contractors would submit bids pursuant to HUD's Consolidated Supply Program; in connection therewith, HUD published their Consolidated Supply Manual ("CSP Manual") which sets forth the approved contractors for the particular type of work and permissible prices according to size and quantity of product. The plaintiff became an approved HUD contractor to install grille work systems for public housing authorities in regions which included Stamford.
Eventually the plaintiff submitted proposals to the defendant including the types and quantities of grilles it proposed to install and the prices therefor. The defendant issued purchase orders based upon these proposals, and the plaintiff proceeded with the work specified by the purchase orders.
Reducing the evidence presented at the hearing to its CT Page 7517 simplest terms, the facts giving rise to the issue in this matter are these. The CSP manual requires the prices of the grilles to be in terms of "united inches". Each grille or grille system is to cover an opening, and the opening is to be measured by adding its width and its height, the sum of which is stated in united inches. HUD (and the defendant HACS) interprets the CSP manual as requiring that when two windows are together, separated by a mullion, the entire combination is to be considered an opening, its size measured in united inches with a bid price to be per united inch. The plaintiff contends however, that each separate window is an "opening" and is to be measured as such. It was demonstrated that when one measures united inches by HUD requirements, they total less than when each window is counted as an opening (the CSP manual contains no definition of the word "opening"). Thus, the plaintiff's proposal to HACS, and the purchase orders based thereon, contained total costs greater than that allowed by the CSP manual under HUD's interpretation. That being so, the defendant has not paid the plaintiff the balance of the contract price, which plaintiffs' claim to be $199,458, but which the defendant believes is $53,524.50.
The circumstances under which a prejudgment remedy may be granted, after a hearing, are governed by Connecticut General Statutes § 52-278d(a).[1] To establish probable cause under the statute, a plaintiff must show that there is probable cause that a judgment in the amount of the prejudgment remedy sought will be rendered in favor of the plaintiff. The concept of probable cause involves a bonafide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. New England Land CompanyLtd. v. DeMarkey, 213 Conn. 612, 620, 569 A.2d 1098 (1990); Wallv. Toomey, 52 Conn. 35, 36 (1884).
The plaintiff bases its cause of action on breach of contract. It alleges a specific contract was entered into calling for installation of a certain number and types of grilles at stated prices based on united inches, and that said agreement was clear and unambiguous.[2]
In its defense HACS argues (1) that there was no meeting of the minds and therefore no binding contract between the parties, and (2) if there was a contract the defendant rescinded it in timely fashion because it was entered into by HACS based upon misrepresentations which were false and misleading. CT Page 7518
From the elicited facts, there is no question that the parties intended to enter into a contract which would be in full compliance with HUD's CSP manual. The plaintiff's proposal and the defendant's purchase order reference "HUD CSP Contract-89-218" and "HUD Consolidated Contract #CSP-89-218", respectively. Price quotations were based in united inches as required by the CSP manual. The plaintiff submitted its proposals, upon which the defendant based its purchase orders, by measuring united inches of each separate window, whereas HUD calculated united inches by adding the width and height of each "opening", which it said consisted in some cases of two or more windows separated by mullions. The different methods of calculations and price produces a substantial disparity. When the defendant discovered that the plaintiff's method of calculation of the contract price was not that required by HUD, it rescinded the contract by letter dated March 26, 1991. The question the court will address is whether, assuming a valid contract and under all the circumstances of this case, there was a valid recision of that contract.
A contractee may rescind a valid contract which was entered into upon a material misrepresentation. E F Construction Co. v.Stamford, 114 Conn. 250, 258, 158 A. 551 (1932). Misrepresentations need not be fraudulent, but may be sufficient to vitiate a contract if they are non-fraudulent, but are false and are material to the contract, and the party who relied thereon had a right to do so. Id., 157-158; State v. Hartford Accident Endemnity. Co., 136 Conn. 157,167, 70 A.2d 109 (1949).
The plaintiff in a letter to HUD dated July 25, 1989 made it clear that its method of calculating prices was at variance with HUD's. Indeed, its president stated in the letter that "there must be some exceptions" to HUD's methods of measuring united inches. This letter, and HUD's reply that proposals must not deviate from the CSP manual requirements, were both prior to plaintiff's submission of its proposals to the defendant. Thus, the plaintiff's proposals, and the prices contained therein, did not reflect HUD's requirements, and the plaintiff was or should have been aware of that.[3] Its subsequent proposals to the defendant therefore contained price information which were false and misleading, and the defendant relied thereon in issuing its purchase orders. The defendant, who knew that the plaintiff was a HUD approved contractor, and who properly expected that the plaintiff would submit proposals in conformance with the CSP manual, had a right to rely upon the prices set forth in the CT Page 7519 plaintiff's proposals, and did so. The misrepresentations, of course, were material to the contract. The plaintiff, therefore, has not shown probable cause that a judgment will be rendered its favor in the amount of $199,458.00.
However, this does not end our inquiry. In the unsigned complaint accompanying the plaintiff's application for prejudgment remedy, it claims entitlement based upon the theory of unjust enrichment and that it can recover the reasonable value of its performance. The defendant concedes that if the contract had been in accordance with the CSP manual, the balance owed the plaintiff after all payments are deducted would be $53,524.50. However, the defendant also raises the defenses of fraud, violation of CUTPA, and further contends that the court has no authority to grant a PJR for any amount less than the amount requested by the plaintiff. The court finds that there was insufficient evidence that the defendant would prevail upon its defense of fraud, especially given the standard of proof by clear of convincing evidence required. Nor was there enough evidence to suggest the defendant would prevail upon its defense or counterclaim alleging CUTPA violations by the plaintiff.
The court rejects the defendant's claim that because the plaintiff has not demonstrated that it is entitled to a prejudgment remedy in the amount claimed, no remedy at all may be granted. The defendant presents no authority for this position, nor is the court aware of any. Further, a study of C.G.S. §52-278k instructs us that the legislature never intended such an interpretation of the PJR statutes. "The court may, upon motion and after hearing, at any time modify or vacate any prejudgment remedy granted or issued under this chapter upon the presentation of evidence which would have justified such court in modifying ordenying such prejudgment remedy under the standards applicable atan initial hearing." C.G.S. 52-278k (Emphasis added). The conclusion that a court is not required to choose between either granting a PJR as requested or denying it, is compelling.
The defendant has conceded that the maximum amount of any judgment in favor of the plaintiff would be $53,524.50. In its proposed complaint the plaintiff claims unjust enrichment in an alternate count. Given that this sum is what the plaintiff would be entitled to under the contract if it had complied with the CSP manual, the defendant would be hard pressed to deny that said figure represents the balance of the reasonable value of the work performed, and that the plaintiff is entitled to it. CT Page 7520
Accordingly, the court finds probable cause that the plaintiff will recover a judgment in its favor in the amount of $53,524.50. A prejudgment remedy to secure the sum of $60,000 is granted, to attach the following property of the defendant: All cash proceeds on account in the custody of the comptroller of the City of Stamford.
So ordered.
Dated at Stamford, Connecticut, this 2nd day of December, 1996.
D'ANDREA, J.