[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff seeks to recover a sum of money from the defendant.
In May, 1999 the defendant was driving a Mitsubishi Eclipse. She wanted a lower payment then she was paying. She wanted to pay the sum of $225 instead of the existing $295 monthly.
The car was financed through the Bank of Boston.
She went to the office of the plaintiff and explained her situation. Mr. Rittenhouse told her that he could not lower the present price but that he could arrange for a new lease.
The papers involved were:
(a) vehicle lease agreement (Exhibit 1)
(b) leasing agreement (Exhibit 4)
(c) assignment and authorization for payoff (Exhibit 3)
Mr. Rittenhouse asked the defendant for her social security number, which she gave him. He called Sovereign Bank, and by machine, was given a loan figure of $5873.92. This was included in the payoff (Exhibit 3). The papers were signed May 20, 1999.
The assignment and authorization (DMV Form H-12, rev. 5-99) required CT Page 8329 that the purchaser determine from the lien holder the balance due on the lease. The name, Sovereign Bank, appears in the assignment and authorization form, with the loan financed. The figure of $3126.08 was the allowance given in the lease not $5873.92. The Bank of Boston was never involved in the negotiations.
In due course, the papers were forwarded to the defendant.
On June 16, 1999, the plaintiff sent a letter to the defendant stating that she provided incorrect information as to the loan and amount owed, and giving her five days to return the car.
The defendant replied that she had five working days to clear the matter up.
This complaint followed on January 18, 2000.
"The scope of liability for innocent misrepresentation has varied with time and with context, in American law generally and in this court. Traditionally, no cause of action lay in contract for damages for innocent misrepresentation; if the plaintiff could establish reliance on a material innocent misstatement, he could sue for rescission, and avoid the contract but he could not get affirmative relief. See Restatement (Second), Contracts §§ 304, 306, and Introductory Note to Chapter 13 (Tentative Draft No. 11, 1976). In tort, the basis of responsibility, although at first undifferentiated, was narrowed, at the end of the 19th century, to intentional misconduct, and only gradually expanded, in this century, to permit recovery in damages for negligent misstatements. Prosser, Torts (4th Ed. 1971) § 107. At the same time, liability in warranty, that curious hybrid of tort and contract law, became firmly established, no later than the promulgation of the uniform Sales Act in 1906. In contracts for the sale of tangible chattels, express warranty encompasses material representations which are false, without regard to the state of mind or the due care of the person making the representation. For breach of express warranty, the injured plaintiff has always been entitled to choose between rescission and damages. Although the description of warranty liability has undergone clarification in the Uniform Commercial Code, which CT Page 8330 supersedes the Uniform Sales Act, these basic remedial principles remain unaffected. At the same time liability in tort, even for misrepresentations which are innocent, has come to be the emergent rule for transactions that involve a commercial exchange. See Restatement (Second), Torts § 552C (1977); Prosser, Torts (4th Ed. 1971) § 107, pp. 710-14.
In Connecticut law, strict liability for innocent misrepresentation in the sale of goods is well established. As long ago as Bartholomew v. Bushnell, 20 Conn. 271 (1850), this court held (p. 275) that [i]f a man sell a horse to another, and expressly warrant him to be sound, the contract is broken, if the horse prove otherwise. The purchaser, in such case, relies upon the contract; and it is immaterial to him, whether the vendor did, or did not, know of the unsoundness of the horse. In either case, he is entitled to recover all the damages, which he has sustained. "For similar reasons, strict liability for innocent misrepresentation was imposed in a construction contract in E. F. Construction Co. v. Stamford, 114 Conn. 250, 158 A. 551 (1932). In Stamford, the defendant's erroneous description of subsurface conditions materially affected the plaintiffs excavation costs. This court held the misrepresentation to be actionable, even though there was no allegation of fraud or bad faith, because it was false and misleading, "in analogy to the right of a vendee to elect to retain goods which are not as warranted, and to recover damages for the breach of warranty. [Citations omitted.]' Id., 258. Stamford
quotes, with approval, from 3 Williston, Contracts § 1512, p. 2689 (1920): If a man makes a statement in regard to a matter upon which his hearer may reasonably suppose he has the means of information, . . . and the statement is made as part of a business transaction, or to induce action from which the speaker expects to gain an advantage, he should be held liable for the consequences of reliance upon his misstatement." Id., 259. Bartholomew and Stamford
together make it clear that liability for innocent misrepresentation is not a novelty in this state, that such liability is based on principle of warranty, and that such warranty law is not confined to contracts CT Page 8331 for the sale of goods."
Johnson v. Healy, 176 Conn. 99, 100-102.
 "In matters susceptible of actual knowledge, if the party who has and is known to have the best means of knowledge, makes an affirmation contrary to the truth, in order to secure some benefit to himself, the law treats him as stating that he knows that whereof he affirms, and so as guilty of a fraud, although he spoke in ignorance of the facts; because he asserts that he knows what he does not know. A fraudulent representation in law is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it."
 The defendants also claim that the plaintiff could have had and should have had a survey made. The defendants, as owners, had the best means of knowing the size of their property. Without knowledge, they recklessly represented that the land contained approximately eighty-three acres. They made false representations to induce the plaintiff to rely upon them. The plaintiff did rely upon them to his loss. It matters not that the plaintiff had the opportunity to have the land surveyed. His omission to have a survey made was a natural consequence of the fraudulent representations. False representations to a vendee of the acreage of land are statements of fact and may constitute fraudulent representation, even though the vendee might have ascertained their falsity. Lovejoy v. Isbell, 73 Conn. 368, 375, 47 A. 682. Every element essential to support this action for false representations is found in the record.
 The plaintiffs appeal rests upon the contention that the court erred in determining the amount of damages. The plaintiff maintains that the damages to which he was entitled was the difference between the actual value of the property and its value had it been as represented. This is a correct statement of the rule. It is the rule applied by the trial court in this case."
Clark v. Haggard, 141 Conn. 668, 672, 673. CT Page 8332
 "An innocent misrepresentation may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth."
Richard v. A. Waldman Sons, Inc., 155 Conn. 343, 346.
 "This court has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth."
William Ford Inc. v. Hartford Courant Co., 232 Conn. 559, 575.
 The element of innocent misrepresentation are (1) a representation of material fact (2) made for the purpose of inducing the purchase, (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation by the defendant and (5) damages. Johnson v. Healy, 176 Conn. 97, 405 A.2d 54 (1978).
Frimberger v. Anzellotti, 25 Conn. App. 401, 410.
The Restatement of Torts (2nd Edition) states the rule as follows:
 "TOPIC 4. INNOCENT MISREPRESENTATION
§ 552C. Misrepresentation in Sale, Rental or Exchange Transaction
 (1) One who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.
 (2) Damages recoverable under the rule stated in this section are limited to the difference between the value of what the other has parted with and the value of what he has received in the transaction."
See Boucher v. Valus, 6 Conn. Cir. Ct. 661, 665. CT Page 8333
 "It is a truth very certain that, when it is not in our power to determine what is true, we ought to follow what is most probable." Decartes, Rene Discours.
". . . ignorance because of the omission to read the [policy] or of a careless reading."
Palmer v. Hartford Ins. Co., 54 Conn. 488, 501.
The court finds for the plaintiff on the complaint. The court finds for the plaintiff on the special defense. The court finds for the plaintiff on both counts of the counterclaim. The court awards the plaintiff the sum of Three Thousand One Hundred Twenty-Six Dollars and Eight Cents, ($3126.08) and interest.
Robert P. Burns Judge Trial Referee